[No. B106312. Second Dist., Div. Four. Sept. 25, 1997.]

ANITA THOMPSON, Plaintiff and Respondent, v.
TYRONE THAMES, Defendant and Appellant.

COUNSEL

Louis P. Dell for Defendant and Appellant.

Gil Garcetti, District Attorney, Patrick D. Moran, Assistant Head Deputy District Attorney, Andrea R. Schrote and Marshall Rieger, Deputy District Attorneys, for Plaintiff and Respondent.

OPINION

HASTINGS, J.—The shameful history of delay in this matter is reminiscent of that nightmare case of Dickens's imagination, *Jarndyce and Jarndyce*.[1] In this case we address the retroactive portion of a Los Angeles County judgment issued under the Uniform Reciprocal Enforcement of Support Act (URESA, Fam. Code, § 4800 et seq.) which orders child support payments retroactive to 1990 based on a court order issued in another California jurisdiction prior to an order changing venue to Los Angeles County.

BACKGROUND

On January 11, 1980, Sherrianita P. (minor) was born in Washington, D.C., to Anita P. (now Anita Thompson) (Anita) and appellant. Appellant provided some financial support for the minor, and minor lived with appellant's parents from August 1980 to February 1985 while Anita attended college. At some point after February 1985, Anita took the minor to live with her. Appellant moved to California, and the minor lived with him one month each summer.

In 1986, Anita, now married and residing in North Carolina, experienced sufficient financial difficulties to cause her to contemplate proceedings against appellant for support of the minor. By letter dated November 26, 1986, a North Carolina agency requested a United States Navy installation in San Diego, California, to confirm a San Diego address for appellant, or to provide information regarding his then current or last known address. Early in 1988, Anita initiated child support proceedings, in forma pauperis, through the auspices of North Carolina's Guilford County Child Support Enforcement Agency. She executed an URESA Uniform Support Petition, designated No. 2197857, requesting establishment of paternity, $250 a month in child support, and medical coverage for the minor. In support of the petition, Anita executed a paternity affidavit, naming appellant as minor's father and stating that the child had been born after appellant and Anita had lived together at the home of appellant's parents.

---

[1] Bleak House, Charles Dickens, 1868.

In compliance with URESA requirements, North Carolina Judge Robert E. Bencini, Jr., certified that the petition and testimony set forth facts from which appellant could be found to owe a duty of support to the minor, and that appellant was believed to be residing at the San Diego address therein indicated. Judge Bencini ordered that the certificate and petition be sent to San Diego, California.

On March 23, 1988, the San Diego County Superior Court received the above documents. The clerk of that court assigned the matter No. D 258399 (Anita P. v. Thames (Super. Ct. San Diego County, 1988)).

On April 10, 1990, the District Attorney of San Diego County, representing "the public interest" but not Anita individually (Welf. & Inst. Code, § 11475.1, subd. (a), *Monterey County* v. *Cornejo* (1991) 53 Cal.3d 1271, 1284 [283 Cal.Rptr. 405, 812 P.2d 586]), filed an order to show cause (OSC), requiring appellant to appear on June 11, 1990, to give legal reason why he should not be ordered to pay child support. The Superior Court of San Diego County issued a summons. On April 18, 1990, appellant received personal service of the summons, OSC, URESA petition, and related documents.

On June 11, 1990, appellant failed to appear and the court entered an order by default, requiring appellant to pay $250 a month effective July 1, 1990, by wage assignment disbursed to North Carolina.

On October 2, 1990, appellant filed an OSC to "Set aside judgment/order, quash wage assn., and for change of venue." In support, appellant declared he had contacted the San Diego District Attorney's office several times prior to the June 11, 1990 hearing and requested that the matter be transferred to Los Angeles. Appellant stated that the district attorney's office had agreed but then had failed to effect the transfer. Appellant asked the San Diego court to set aside the "Judgment and/or Order," based upon mistake, inadvertence, surprise, and excusable neglect (Code Civ. Proc., § 473), and transfer the case to Los Angeles County, where he resided. Appellant denied having fathered the minor and asked the court to quash the wage assignment.

On October 29, 1990, the San Diego County court entertained appellant's requests in a reported hearing, for which there is no transcript in the record on appeal. Anita and the minor did not appear and were not personally represented at this hearing. Handwritten notations on the minute order first indicate appellant's places of employment and the location of his residence in Los Angeles County. Then come the following statements: "[Appellant] to cooperate in accepting service. The Dept. of Revenue's Recovery [unit] to

transfer all monies held in trust to the appropriate Los Angeles agency. Pursuant to CCP § 473 all orders of 6-11-90 the judgment are set aside. Venue transferred to Los Angeles County. *The court retains jurisdiction to make all child support orders retroactive to the original hearing date.* The wage assignment order is vacated." (Italics added.) The order bears either the signature of the trial judge or his stamped signature. Appellant raised no objection of any kind to this order and requested no statement of decision.

Between October 29, 1990, and January 23, 1992, this matter did not progress. For unknown reasons, Los Angeles County was unaware that San Diego No. D 258399 had been ordered transferred to its jurisdiction.

On January 23, 1992, the California Department of Justice Central Registry, located in Sacramento, received a "Child Support Enforcement Transmittal" from North Carolina, which basically reiterated Anita's claims. This document reflects under the heading "Date and Type of Last Court/Administrative Action" court No. D 258399, that is, the San Diego case. It also reflects the number borne by Anita's original North Carolina petition, No. 2197857. Appellant's motion for OSC to set aside the order, quash the wage assignment, and transfer the case to Los Angeles County is referenced as an attachment.

By letter dated April 7, 1992, the California Department of Justice Central Registry notified North Carolina that it had determined the documentation package to be "legally sufficient for processing in California" and had forwarded the entire package to Los Angeles County for further action.

On June 26, 1992, the clerk of the superior court of Los Angeles County notified the Los Angeles County Disrict Attorney that documents regarding reciprocal support proceedings had been received from North Carolina and filed, and that the clerk had forwarded the notice and copies of those documents to the district attorney's office on that same date. The clerk designated the matter as Los Angeles County No. BL009125.

Also filed on June 26, 1992, was a second version of Anita's petition, bearing North Carolina file No. 91CVD11268 and referencing her original petition. As relevant, the second petition differs from the original version in that it does not request establishment of paternity but does request arrearages "if established by [the] court." As "current ordered support," the document indicates an order of $250 monthly and then states: "set aside judgment of 6/11/90, transfer venue to Los Angeles County, wage assignment vacated; *Court retains jurisdiction to make all child support orders retroactive to the original hearing date (6/11/90)."* (Italics added.) Also referenced is an arrears

statement. A notarized document, signed by Anita and a North Carolina child support agency supervisor, reads in part: "See original order (6-11-90), [appellant's] correspondence and motion, and subsequent order (10-29-90). Per telephone calls to both San Diego and Los Angeles Counties, original petition, updated documents and all orders pertaining to the original action have been lost in the venue change. If [appellant] raises the issue of paternity (although paternity was clearly established pursuant to the 6-11-90 order) [Anita] is willing to submit to bloodtesting. Upon entry of an order, we request arrearage be assessed from date of original order to date of subsequent order and respondent be ordered to pay same in full."

On October 15, 1992, the Los Angeles County District Attorney issued a citation to appellant, referencing Los Angeles County Superior Court No. BL009125. The citation required appellant to appear on November 10, 1992, to show cause why an order should not be made and entered based on the URESA petition on file, "a copy of which is attached, directing that you pay such sum as the court may determine for the support of the [minor]."

On November 10, 1992, the district attorney took the matter off calendar.

The matter apparently lay dormant until August 23, 1993, when the court itself set a hearing for September 22, 1993. On that date, the court granted the request of the district attorney to take the matter off calendar, and reset the hearing for January 6, 1994. On January 6, 1994, the court again granted the request of the district attorney to take the matter off calendar, and reset the hearing for March 9, 1994. On March 9, 1994, for the third time, the court granted the request of the district attorney to take the matter off calendar, and reset the hearing for October 28, 1994.

On October 28, 1994, the district attorney failed to appear. The court granted appellant's motion for appointed counsel, pro bono publico, and continued the matter to January 3, 1995. Appellant stipulated to appointment of a referee as temporary judge.

On January 3, 1995, the referee granted appellant's motion to continue the matter to June 5, 1995. It also ordered appellant to submit to blood tests.

On March 3, 1995, appellant filed his answer, citing Los Angeles County No. BL009125. After denying certain allegations of the URESA petition and denying paternity, appellant asserted, inter alia, the following as affirmative defenses: "5. There is another action pending between the same parties on the same cause of action. [¶] 6. The pleading is uncertain, ambiguous and unintelligible in that it seeks to collect specified arrears based upon a

previous judgment but then admits that the judgment was vacated. The pleading also requests that arrears are to be determined at hearing based upon another pending action. [¶] 7. Any and all relief requested is barred by the statute of limitations pursuant to Welfare & Institutions Code Section 11350 and Civil Code of Procedure 338."[2]

On October 4, 1995, the referee continued the matter at appellant's request to March 7, 1996. It granted the district attorney's request to amend the petition to include "paternity establishment and blood testing" and ordered the blood tests.

On March 7, 1996, Anita's amended URESA petition, executed by her on December 11, 1995, was filed in the Los Angeles County court. It bears file No. 91CVD11268, the same number as the second version of her petition, and again references the original, initiating petition. This third version of the URESA petition differs substantively from the second *only* in that it again requests establishment of paternity—as did the original URESA petition.

At the March 7, 1996 hearing, the referee received the paternity blood test results and found they supported the presumption that appellant had fathered the minor. The referee ordered appellant to pay $212 child support per month commencing April 1, 1996, and to provide medical insurance for the minor. He continued the matter to May 2, 1996.

The next several months were consumed by appellant's unsuccessful attempts to prove that Anita's husband had fathered the minor.

On July 17, 1996, the referee found that appellant was the father of the minor, a fact appellant then admitted, and that appellant's current income was $27,996. It ordered child support payments of $240 a month, commencing August 1, 1996, and set arrearages at $11,008. The referee's recommended order details the payments to be made and contains the following statement: *"Support is ordered retroactive to 6/11/90 based upon San Diego's retention of jurisdiction to that date. . . .* The court reserves jurisdiction to modify arrears upwards. . . ." (Italics added.)

On August 12, 1996, appellant objected to the recommendation that child support payments be made retroactive to the June 11, 1990, San Diego hearing date. Appellant argued, inter alia, that the judgment in San Diego had been vacated, "venue was never transferred," and the original petition presumably had expired on April 10, 1995, for failure to bring the matter to

---

[2]These statutes set forth a three-year limitation for the recovery of county welfare funds expended for the support of a deserted family. They are not applicable to this case.

trial within five years. Appellant claimed that on November 26, 1991, Anita had filed "a separate petition in Los Angeles County seeking a judgment of child support and medical coverage," and a hearing citation had issued on that petition on September 22, 1994.[3] Appellant asserted: "[Anita] elected not to pursue the San Diego petition and instead elected to simply file a separate petition in Los Angeles. As such, [Anita] is not legally entitled to append retroactivity orders made in the San Diego case and apply them to the Los Angeles case." Appellant also asserted that the order violated his due process rights, and he requested a de novo hearing.

The court adopted the findings and recommendations of the referee, and this appeal followed.

The minor is now 17 years old.

## Discussion

■ Appellant contends that the San Diego reservation of jurisdiction is without legal effect and that holding appellant to the June 11, 1990, commencement date for support payments violates his rights of due process. As we shall explain, contrary conclusions are required under the circumstances of this case.

### San Diego Court Order

Appellant contends that the San Diego order stating that the court reserved "jurisdiction to make all child support orders retroactive to the original hearing date," that is, June 11, 1990, has no legal effect for the following reasons: (1) the San Diego order was improper; (2) venue was never transferred; (3) the five-year statute of limitations terminated the San Diego proceedings; (4) Anita initiated two separate and independent actions; (5) the San Diego order conflicts with Family Code provisions governing when support payments commence. We address these issues seriatim.

### 1. The San Diego Order Was Proper

Generally, the filing of a motion for change of venue operates as a supersedeas or stay of proceedings, and the court cannot rule on other

---

[3]The record on appeal contains neither a petition filed November 26, 1991, in Los Angeles County Superior Court nor a September 22, 1994, hearing citation. As set forth in the facts, Anita did file a second version of her petition in Los Angeles on June 26, 1992. That document indicates a Guilford County, North Carolina filing date of November 26, 1991, and, as previously noted, references the original petition filed in San Diego.

substantive issues while the motion for change of venue is pending. (Code Civ. Proc., §§ 395, 396; *Moore* v. *Powell* (1977) 70 Cal.App.3d 583, 587 [138 Cal.Rptr. 914]; *Pfefferle* v. *Lastreto* (1962) 206 Cal.App.2d 575, 580-581 [23 Cal.Rptr. 834, 99 A.L.R.2d 663].) In 1939, the Legislature amended Code of Civil Procedure section 396b to provide a family law exception to the general rule: Upon the hearing of a motion for change of venue, "the court shall, if it appears that the action or proceeding was not commenced in the proper court, order the same transferred to the proper court; *provided, however, that the court in an action for divorce or separate maintenance, may, prior to the determination of such motion, consider and determine motions for allowance of temporary alimony, support of children, counsel fees and costs, and make all necessary and proper orders in connection therewith;* . . ." (Stats. 1939, ch. 149, § 1, p. 1263, in effect Sept. 19, 1939, italics added.)

*Beard* v. *Superior Court* (1940) 39 Cal.App.2d 284 [102 P.2d 1087], is a case whose facts are very similar to those of the instant case. Although appellant did not cite *Beard* in his brief, its outcome on appeal is the one which appellant seeks. We asked the parties to address the significance of this case in letter briefs. (Gov. Code, § 68081.)

In *Beard*, the plaintiff mother of an illegitimate minor filed an action under former Civil Code section 196a, pertaining to support for children born out of wedlock. The defendant father noticed a motion for a change of venue to the county of his residence. Plaintiff filed a motion for support money, attorney fees, and costs pendente lite. The trial court granted this motion and ordered the father to comply within 15 days, or the trial court would deny his motion for change of venue. In a writ proceeding, the appellate court posed one question: "Was [the trial court's] order requiring the payment of support money, attorney's fees, and costs pendente lite prior to the determination of [father's] motion for a change of venue void?" (39 Cal.App.2d at p. 286, italics omitted.) The court answered yes, holding that the Code of Civil Procedure section 396b exception was not applicable to an action brought under Civil Code section 196a: "Section 396b of the Code of Civil Procedure has no application to an action under the provisions of section 196a of the Civil Code. The latter code section pertains to support money for a child born out of wedlock, while section 396b of the Code of Civil Procedure has application to actions for divorce and separate maintenance." (39 Cal.App.2d at p. 286.) *Beard* is still referenced as authority for this proposition. (3 Witkin, Cal. Procedure (4th ed. 1996) Actions, § 830, pp. 1020-1021; 61 Cal.Jur.3d, Venue, § 61, p. 406, fn. 85; 93 A.L.R.2d 807, fn. 9.) While we believe that *Beard* was wrongly decided, we conclude that

since *Beard* was decided, the Legislature has nullified whatever authority the case may have had.[4]

The subsequent history of Civil Code section 196a leaves no doubt that, despite the status of a minor's birth, a court may consider child support matters during the pendency of a motion for change of venue. The 1965 amendment to this section substituted for "the same as under [the five Civil Code sections referenced in Code of Civil Procedure section 396b]," "the same as is the case with respect to legitimate children." The 1975 amendment deleted all references to the legal status of the minor's birth while retaining the procedural reference.[5] This amendment was part of Senate Bill No. 347. An enrolled bill memorandum to the Governor, dated October 1, 1975, explains: "Existing law contains numerous distinctions as to the legal

[4]When *Beard* was decided in May 1940 (the plaintiff having filed her action in January of the same year), Civil Code section 196a was sufficiently broad to support a conclusion contrary to that reached by the *Beard* court. That section then provided: "The father as well as the mother, of an illegitimate child must give him support and education suitable to his circumstances. A civil suit to enforce such obligations may be maintained in behalf of a minor illegitimate child, by his mother or guardian, or by a guardian ad litem appointed upon the written application or with the consent of his mother; provided, that such application or consent shall not be necessary if the mother is dead or incompetent, and in such action *the court shall have power to order and enforce performance thereof, the same as under sections 137, 137.5, 138, 139 and 140 of the Civil Code, in a suit for divorce by a wife*." (Stats. 1939, ch. 424, § 1, p. 1758, in effect Sept. 19, 1939, italics added.)

*Beard* relied solely, without discussion, upon four cases, all of which were decided before the 1939 amendment of Code of Civil Procedure section 396b: *Nolan v. McDuffie* (1899) 125 Cal. 334 [58 P. 4]; *Hennessy v. Nicol* (1894) 105 Cal. 138 [38 P. 649]; *Pickwick Stages System v. Superior Court* (1934) 138 Cal.App. 448 [32 P.2d 433]; and *Walsh v. Superior Court* (1919) 44 Cal.App. 31 [185 P. 998]. The *Nolan* and *Pickwick* cases do not treat domestic matters.

In *Hennessy v. Nicol, supra*, 105 Cal. 138, a desertion case, the trial court refused to hear husband's venue motion until he complied with its order granting wife's earlier filed motion for support pendente lite for herself and the couple's infant. On review, the California Supreme Court held that Code of Civil Procedure section 395, generally providing that an action must be tried in the county in which a defendant resides, was dispositive, the wife had no right to have her motion for temporary alimony heard first, and the trial court had no right to make compliance with the order awarding alimony a condition precedent to the hearing of the motion to change venue. *Walsh v. Superior Court, supra*, 44 Cal.App. 31, held that a motion for attorney fees by the plaintiff wife in a divorce action could not be heard while a motion for change of venue by the defendant husband was pending, citing *Hennessy*.

No case has cited *Beard* for its holding that Code of Civil Procedure section 396b cannot apply to actions brought under Civil Code section 196a, or any other statutes treating children born out of wedlock; and *Stutsman v. Stutsman* (1947) 79 Cal.App.2d 81 [178 P.2d 769], a divorce case that invoked Code of Civil Procedure section 396b as amended in 1939, assumed *Beard* was required to rely upon law established prior to the amendment. (*Stutsman v. Stutsman, supra*, 79 Cal.App.2d at pp. 84-85.)

[5]That version of former Civil Code section 196a provided: "The father as well as the mother of a child must give him support and education suitable to his circumstances. A civil suit to enforce such obligations may be maintained in behalf of a minor child, and in such action the court shall have power to order and enforce performance thereof, the same *as in a suit for dissolution of marriage*." (Stats. 1975, ch. 1244, § 2.5, p. 3195, italics added.)

treatment of children deemed legitimate and those deemed illegitimate. [¶] This bill would eliminate current distinctions in the law between legitimate and illegitimate children. The bill would enact the Uniform Parentage Act to provide a procedure to establish the parent-child relationship without regard to distinctions based on legitimacy. . . ."

In 1992, Civil Code section 196a was supplanted by Family Code sections 3900 and 4000 "without substantive change." (See Cal. Law Rev. Com. com., 29D West's Ann. Family Code (1994 ed.) §§ 3900, 4000, pp. 530-531, 557-558 under each section.) Family Code section 3900 provides: "Subject to this division, the father and mother of a minor child have an equal responsibility to support their child in the manner suitable to the child's circumstances." (Stats. 1992, ch. 162 [Assem. Bill No. 2650], § 10, operative Jan. 1, 1994.) Family Code section 4000 reads: "If a parent has the duty to provide for the support of the parent's child and willfully fails to so provide, the other parent, or the child by a guardian ad litem, may bring an action against the parent to enforce the duty." (Stats. 1992, ch. 162 [Assem. Bill No. 2650], § 10, operative Jan. 1, 1994.) Although Family Code sections 3900 and 4000 did not carry over the express procedural reference of former Civil Code section 196a, the legislative history of the latter section compels the conclusion that Code of Civil Procedure section 396b governs the instant action. The legislative history demonstrates the "conscious whittling away" of the legal distinctions between children born of a marriage and those born otherwise. (*Estate of Woodward* (1964) 230 Cal.App.2d 113, 117-119 [40 Cal.Rptr. 781] [illegitimate minor, not publicly acknowledged by father, entitled to receive family allowance from father's estate, referencing Civ. Code, § 196a]; see also *Carbone* v. *Superior Court* (1941) 18 Cal.2d 768 [117 P.2d 872, 136 A.L.R. 1260]; *City and County of San Francisco* v. *Superior Court* (1978) 86 Cal.App.3d 87 [150 Cal.Rptr. 45]; *Stargell* v. *Stargell* (1968) 263 Cal.App.2d 504, 507 [69 Cal.Rptr. 715]; *Guay* v. *Superior Court* (1957) 147 Cal.App.2d 764, 767 [305 P.2d 990]; *DeSylva* v. *Ballentine* (1950) 96 Cal.App.2d 503, 513 [215 P.2d 780]; *Sharpe* v. *Wesley* (1947) 78 Cal.App.2d 441, 444 [177 P.2d 802], all of which acknowledge the application of Code Civ. Proc., § 396b as amended in 1939 to Civ. Code, § 196a.)

As stated in *Miller* v. *Laird* (D.C. Cir. 1972) 349 F.Supp. 1034, 1047, a class action challenging the constitutionality of a law excluding dependent illegitimate children of military personnel from medical benefits, " '[T]here are no illegitimate children, only illegitimate parents', and statutes, such as the one here, which visit upon innocent children the consequences of their parents' misbehavior are constitutionally unbearable." (Fns. omitted.)

We next consider the language of the San Diego order as recorded in the minutes and the applicability of Code of Civil Procedure section 396b.

At the time the San Diego court made its October 29, 1990 order, Code of Civil Procedure section 396b provided as relevant: "(c) The court in a proceeding for dissolution of marriage or legal separation, may, *prior to the determination of the motion to transfer*, consider and determine motions for allowance of temporary . . . support of children, counsel fees and costs, and make all necessary and proper orders in connection therewith." (Stats. 1989, ch. 1417, § 3.5, p. 6272, italics added.)[6]

At the 1996 hearing in Los Angeles, appellant argued, and again argues on appeal, that the order by the Los Angeles court for child support could not be made retroactive to June 11, 1990, because the San Diego court had first vacated its judgment, thereby relinquishing its jurisdiction over the matter, and thus its later purported retention of jurisdiction to make all child support orders retroactive was a nullity. Appellant's position is not well taken.

■ The clerk, who is a ministerial rather than a judicial officer (*Isbell* v. *County of Sonoma* (1978) 21 Cal.3d 61, 71 [145 Cal.Rptr. 368, 577 P.2d 188]), made handwritten notations in the October 29, 1990, minute order in the following sequence: (1) a list of appellant's places of employment; (2) the address of appellant's residence; (3) "[Appellant] to cooperate in accepting service"; (4) "The Dept. of Revenue's Recovery [unit] to transfer all monies held in trust to the appropriate Los Angeles Agency"; (5) "Pursuant to CCP § 473 all orders of 6-11-90 the judgment are set aside"; (6) "Venue transferred to Los Angeles County"; (7) "The court retains jurisdiction to make all child support orders retroactive to the original hearing date"; (8) "The wage assignment order is vacated."

The order of these statements is illogical. Most noted is the fact that after the minute order sets aside *all* orders of the June 11, 1990, hearing, it singles out the wage assignment order and expressly vacates it, an unnecessary act. Also, the wage assignment statement is found *after* that transferring venue. Finally, the reservation of jurisdiction comes toward the end of the order, even though a much earlier statement transfers support payments held in trust to Los Angeles County, evidence of the court's desire to protect the minor. We conclude from this record that the handwritten notations are the clerk's synopsis of the court's verbal order.

---

[6]The current version of Code of Civil Procedure section 396b, subdivision (c) differs only in the addition of "spousal support." It provides: "The court in a proceeding for dissolution of marriage or legal separation, may, prior to the determination of the motion to transfer, consider and determine motions for allowance of temporary spousal support, support of children, counsel fees and costs, and make all necessary and proper orders in connection therewith." (Stats. 1992, ch. 163, § 18, operative Jan. 1, 1994.)

We must presume that the court knew and applied the correct statutory and case law. (Evid. Code, § 664; cf. *Martin* v. *State Personnel Bd.* (1975) 46 Cal.App.3d 558, 562 [120 Cal.Rptr. 160].) Under Code of Civil Procedure section 396b, the court had the power during the pendency of appellant's motion for change of venue to make orders relating to the support of the minor. Appellant raised no objection of any kind at the October 29, 1990, hearing and did not request a statement of decision, indicating that the judgment, as actually pronounced by the court, was proper and understood to be so by appellant. Had the court improperly sequenced its orders, a clerical error since the court's intent was clear, and appellant or the deputy district attorney promptly objected, it retained jurisdiction to vacate and correct the error. (*Badella* v. *Miller* (1955) 44 Cal.2d 81, 85-89 [279 P.2d 729]; cf. *In re Marriage of Sheridan* (1983) 140 Cal.App.3d 742, 746 [189 Cal.Rptr. 622].) Furthermore, appellant did not seek review of the order at that time, and, although the hearing was reported, no reporter's transcript is included in the record here. Where the record is silent, all intendments and presumptions are indulged to support the judgment on those matters, and error must be affirmatively shown. (*Denham* v. *Superior Court* (1970) 2 Cal.3d 557, 564 [86 Cal.Rptr. 65, 468 P.2d 193].) Given the incompleteness of the record, appellant has failed to carry his burden to show affirmative error. We conclude that the San Diego court properly reserved jurisdiction to make any future child support orders retroactive to June 11, 1990, before it relinquished its remaining jurisdiction with its grant of appellant's request for change of venue.

Appellant also contends that the reservation of jurisdiction to make child support payments retroactive to the June 11, 1990, hearing constituted an abuse of discretion, asserting that the court made the reservation a condition of its grant of appellant's motion to change venue. There is no evidence in the record that supports appellant's interpretation of the court order.

## 2. Venue Transferred to Los Angeles County

Appellant contends that venue was never transferred from San Diego to Los Angeles. He argues that the requirements of Family Code section 4832, subdivision (b) were never met in that "[t]he record in the instant case is conspicuously absent of the summons and petition and other mandatory documents required by the Act which were supplied by the initiating jurisdiction and which were to be forwarded by the clerk to Los Angeles." We disagree.

Family Code section 4832, subdivision (b) requires the clerk of the transferring court to forward certain documents when the prosecuting attorney informs the court of a defendant's move outside the jurisdiction.[7] Here, of course, appellant initiated the proceeding. In any event, the record does not disclose when or how the documents in the instant case were mislaid. We presume the clerk carried out whatever his or her official duties may have been with respect to the venue order. (Evid. Code, § 664.) The record does reflect that the Los Angeles court had before it sufficient documentation to enable it to rule on the issues. Whether the court's information came from the previously mislaid documents, copies thereof, a reconstruction of the proceedings in the form of Anita's amended petition filed on June 26, 1992, or some combination thereof is, we think, irrelevant. The collected documents functioned as a correction of the record in the Los Angeles court. (Cf. *Wilson* v. *Nichols* (1942) 55 Cal.App.2d 678, 681 [131 P.2d 596].)

Except for limitations on the time in which an action must be brought to trial, discussed next in this opinion, we have found no limitation on the time for transfer of venue, except for circumstances in which a plaintiff fails to pay transfer fees. (See *Moore* v. *Powell, supra,* 70 Cal.App.3d at p. 587; Code Civ. Proc., § 399.) That limitation is not applicable here because the district attorney is not required to pay such fees. (Gov. Code, § 6103.) Given that there is no transfer fee issue, we deem that the Los Angeles County court acquired jurisdiction on June 26, 1992, the date on which Anita filed her second version of the petition, referencing the San Diego proceedings. (Cf. *Brown* v. *Swickard* (1985) 163 Cal.App.3d 820, 827 [209 Cal.Rptr. 844]; *London* v. *Morrison* (1950) 99 Cal.App.2d 876, 879 [222 P.2d 941].) With its acquisition of jurisdiction, the Los Angeles court obtained the San Diego court's reservation of jurisdiction to order child support payments retroactive to the June 11, 1990, hearing date. Code of Civil Procedure section 399 provides as pertinent: "The court to which an action or proceeding is transferred under this title shall have and exercise over the same the like jurisdiction as if it had been originally commenced therein, all prior proceedings being saved, and such court may require such amendment of the pleadings, the filing and service of such amended, additional, or supplemental pleadings, and the giving of such notice, as may be necessary for the

---

[7]California's URESA, Family Code section 4800 et seq., addresses the ministerial duties involved in venue transfers in section 4832, subdivision (b): *"If the obligor . . . is not found in the county, and the prosecuting attorney discovers that the obligor . . . may be found in another county of this state or in another state, the prosecuting attorney shall so inform the court. Thereupon the clerk of the court shall forward the documents received from the court in the initiating state to a court in the other county* or to a court in the other state or to the information agency or other proper official of the other state with a request that the documents be forwarded to the proper court. . . . If the clerk of a court of this state forwards documents to another court, the clerk shall forthwith notify the initiating court." (Italics added.)

proper presentation and determination of the action or proceeding in such court."

### 3. *Five-year Statute of Limitations*

Appellant contends that even if jurisdiction was transferred, the Los Angeles court could not consider the matter because, under Code of Civil Procedure section 583.310, more than five years had elapsed between March 23, 1988, the date the San Diego County clerk received and filed the original petition and related documents, and March 7, 1996, the date when the referee in Los Angeles first ordered appellant to pay support. Appellant's position is not supported by the law.

Code of Civil Procedure section 583.161 provides: "No petition filed pursuant to Section 2330 [proceeding for dissolution of marriage or legal separation] of the Family Code shall be dismissed pursuant to this chapter [including section 583.310] if any of the following conditions exist: [¶] (a) An order for child support has been issued in connection with the proceeding and the order has not been (1) terminated by the court or (2) terminated by operation of law pursuant to Sections 3900 [equal duty of parents to support child], 3901 [duration of duty of support], 4007 [termination of duty to pay support on happening of contingency], and 4013 [power of court to make proper orders for support of child even if obligations for support are discharged in bankruptcy] of the Family Code." These provisions reach the instant case.

As previously discussed, the Legislature in 1975 abolished distinctions in the legal treatment of children based on birth status. Thus, the Family Code support sections referenced in Code of Civil Procedure section 583.161 apply to children born out of wedlock. The San Diego court expressly reserved jurisdiction to make any child support order retroactive to the June 11, 1990, hearing at which it had originally ordered appellant to pay child support. That reservation in itself was a child support order, and it was never vacated. The Los Angeles court acquired that reservation when it acquired jurisdiction of the case. The five-year statute remained tolled during the entire period the order reserving jurisdiction was in effect. (Cf. *Lakkees* v. *Superior Court* (1990) 222 Cal.App.3d 531, 538-540 [271 Cal.Rptr. 845].) The Los Angeles court conducted the trial during that period and issued a judgment that employed the reservation. Therefore the matter was brought to trial within the limitations period.

There is an additional basis for tolling in an action to establish paternity and obtain support. The child is the real party in interest, and the statute of

limitations is tolled on the paternity question during the child's minority. The result is that the "obligation of a father to support his child, whether legitimate or illegitimate, is a continuing duty against which the statute of limitations does not run during the time the child needs such support [citation]." (*Perez* v. *Singh* (1971) 21 Cal.App.3d 870, 872 [97 Cal.Rptr. 920].)

### 4. *One Action*

Appellant argues that the June 11, 1990, order "has no legal effect on a separate lawsuit filed in Los Angeles." We disagree with appellant's characterization of the proceedings and with his conclusion.

We first correct what we perceive as appellant's gross misrepresentation of the record: "Anita elected to file the instant action separate and apart from the one filed in San Diego County." As the detailed history of this case reflects, all delays in these proceedings are attributable to the government agencies involved in the administration of URESA—possibly due to procedural changes—or to appellant's false denial of paternity; none may be laid at Anita's door. After Anita filed her original petition, circumstances beyond her control required her to resubmit her claims for support of the minor and to respond to these lengthy delays. Had the case file been regularly transferred from San Diego to Los Angeles as ordered, there would have been no need for Anita to execute the two additional versions of the child support petition.

Appellant insists that the act of the clerk of the Los Angeles court in stamping a Los Angeles County case number on documents received directly from California government agencies establishes that Anita filed a second, separate action. The argument is without merit. The mere assignation of a case number cannot be held to be the functional equivalent of Anita abandoning the San Diego proceedings and initiating a separate action in Los Angeles County. The clerk would have performed the same act with respect to the San Diego file had it been regularly received. We also note that ample cross-references in the documents before the Los Angeles court, which included a substantial amount of information included in the original San Diego file, reflect that the issues and parties remained the same, regardless of venue. Neither appellant nor the court exhibited any confusion regarding this fact.

### 5. *Date Payments Commenced*

Appellant asserts that the earliest commencement date for payment of child support is the August 1, 1996, date ordered at the July 17, 1996,

hearing and that no arrearages are owed. Appellant's position is not supported by statutory authority.

This action is governed by Family Code section 4009, which provides: "An order for child support may be made retroactive to the date of filing the notice of motion or order to show cause, or to any subsequent date, except as provided by federal law (42 U.S.C. Sec. 666(a)(9))."

42 United States Code section 666(a)(9) provides as pertinent: "Procedures which require that any payment or installment of support under any child support order, whether ordered through the State judicial system or through the expedited processes required by paragraph (2) [expedited administrative and judicial procedures for establishing paternity and proper support payments], is (on and after the date it is due)— [¶] . . . [¶] (C) *not subject to retroactive modification by such State or by any other State; [¶] except that such procedures may permit modification with respect to any period during which there is pending a petition for modification, but only from the date that notice of such petition has been given*, either directly or through the appropriate agent, to the obligee or (where the obligee is the petitioner) to the obligor." (Italics added.)

By its own terms, 42 United States Code section 666(a)(9) is limited to orders modifying child support and does not apply to original orders, such as that at issue here. (*In re Marriage of Goosmann* (1994) 26 Cal.App.4th 838, 843 [31 Cal.Rptr.2d 613]; Hogoboom & King, Cal. Practice Guide: Family Law 1 (The Rutter Group 1997) ¶ 5:142, pp. 5-34.2, 5-34.3.)

*Due Process Issue*

Appellant contends that the retroactive child support order issued by the Los Angeles court violates his rights of due process. His argument rests upon his theory that venue was never transferred to Los Angeles and therefore he had no notice or opportunity to defend against the San Diego order. We have disposed of the venue issue. The record is replete with instances of appellant's actual and constructive notice of the relevant proceedings and the San Diego order in issue, and we note he was represented by counsel in both venues. We conclude there was no violation of due process rights.

## DISPOSITION

The judgment (July 17, 1996, order awarding child support retroactive to June 11, 1990) is affirmed.

Vogel (C. S.), P. J., and Epstein, J., concurred.

Appellant's petition for review by the Supreme Court was denied December 10, 1997.