Filed 3/25/24  Zeng v. Wang CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| YING MAGGIE ZENG,<br>　　　Petitioner and Respondent,<br>v.<br><br>ALBERT HUAI-EN WANG,<br>　　　Defendant and Appellant. | A165473<br><br>(Sonoma County<br>Super. Ct. No.<br>SFL089529) |

Pro per defendant Albert Huai-En Wang (Father) appeals from orders imposing a domestic violence restraining order (DVRO) against him pursuant to Family Code section 6320,[1] granting petitioner and respondent Ying Maggie Zeng (Mother) sole legal and physical custody of their minor child, and awarding Mother attorney fees and costs.  Father contends the trial court erred, arguing primarily that the court should have deferred to provisions in an earlier parenting plan, the custody order is unconstitutional and barred by the doctrines of res judicata and unclean hands, the court misapplied section 6320, he should have been awarded attorney fees, and the award of attorney

---

[1]　　Except where otherwise indicated, all statutory references in this opinion are to the Family Code.

1

fees to Mother was inconsistent with the earlier parenting plan. Having fully considered all of Father's arguments, we will affirm the orders.[2]

## I. FACTS AND PROCEDURAL HISTORY

Father and Mother were married in 2005 and have a minor daughter (Daughter). Their marriage was dissolved in 2013 in a proceeding in Orange County Superior Court. In that proceeding, they entered into a 2014 Stipulation and Order, which included a parenting plan that called for Mother and Father to have joint legal and physical custody and equal parenting time until Daughter could decide for herself where she wanted to live.

In August 2021, Mother requested a change of venue to Sonoma County, where she was living with Daughter. After a hearing, the Orange County Superior Court transferred the case by a written order entered on October 12, 2021, which stated that "[a]ll matters before the Court are transferred to Sonoma County." The case was not actually transferred to Sonoma County, however, until December 2021.

A. <u>Mother's Request for a Temporary Restraining Order (TRO), DVRO, and Change of Custody</u>

On October 20, 2021, Mother filed this separate proceeding against Father in Sonoma County Superior Court, because the dissolution case had not yet been transferred and Mother could wait no longer for relief. Mother sought a TRO and DVRO against Father under the Domestic Violence Prevention Act (§ 6200 et seq.; DVPA), a change of custody and visitation on

---

[2] Father has filed other appeals arising out of his family law issues with Mother. Case No. A166681 (appealing a November 9, 2022 order) and Case No. A168238 (appealing a December 12, 2022 order) are pending. Case No. A168859 (appealing a July 24, 2023 order) was dismissed as an appeal from a non-appealable order.

the ground that the current order placed Daughter at risk of emotional harm, and attorney fees and costs. In an accompanying declaration, Mother described Father's emotionally abusive conduct toward Daughter and his near-daily harassment of Mother, Daughter, and the administration at Daughter's school, which had become so severe that the school principal recommended that Mother obtain a restraining order.

The trial court issued a TRO in favor of Mother and Daughter on October 26, 2021, and set the matter for trial. Pending the trial, the court also granted Mother sole legal and physical custody of Daughter, with no visitation for Father.

### 1. Trial

On the first day of the four-day trial, Father requested an advance of attorney fees so he could hire counsel. The trial court denied the request without prejudice. Mother then testified to the following.

After the parties separated in 2011, Father started harassing Mother by convincing police to conduct welfare checks for Daughter, claiming that Mother was planning to abduct her. He further humiliated Mother by emailing physicians and staff at UC Irvine, where Mother was doing a fellowship.

In 2013, Mother moved to Pennsylvania to take a job as an oncologist. Father did not allow Daughter to go to Pennsylvania for a year. After allowing Daughter to go to Pennsylvania with Mother, Father contacted Mother "very constant[ly]" and emailed Daughter's pre-school, questioning Daughter's safety and accusing Mother of withholding contact. He also called the school, and Mother in the middle of the night, to be sure that Daughter was there.

3

In 2017, Mother moved with Daughter to Sonoma County to work as an oncologist at Kaiser Hospital.  Father agreed to the move.  But Father emailed Daughter's teachers in Santa Rosa, claiming he feared for her safety, asking if he should report Mother to Child Protective Services (CPS), and threatening to pick up Daughter at school and take her away from Mother.  These emails worried and embarrassed Mother.  Father also complained to Daughter's school about Mother's parenting style and falsely claimed that Mother was an officer in the Chinese People's Liberation Army, causing her further embarrassment.

At some point, Father found out that Mother had purchased a firearm.  He told Daughter, "Your mom is going to kill you and kill herself," prompting Daughter to speak with a school counselor, which led to Mother being contacted by CPS.

During the summer of 2021, Daughter was staying with Father in San Diego and was to return to Mother in Sonoma County on July 31.  Father pressured Mother to agree that Daughter would live with him in San Diego every other year and could decide where to attend school.  When Mother refused, Father unilaterally enrolled Daughter in a San Diego school, told Mother he found Daughter a new primary doctor, dentist, and optometrist in San Diego, and threatened to keep Daughter in San Diego.

In July 2021, Mother applied to the Orange County Superior Court for an order returning Daughter to Sonoma County.  The day before the August 2021 hearing, Daughter told Mother " 'I want to die' " and " 'I would have used a knife, but it's too painful.' "  After the hearing, the trial court ordered Father to return Daughter to Mother.  The court thereafter ordered that Daughter go to school in Santa Rosa to maintain the status quo, that Father would have parenting time on Daughter's school breaks and holidays, that

4

Mother would store her firearm with a licensed gun dealer pending further order, that Father would have access to Daughter's "Kaiser portal," and that all other orders not in conflict were to remain in effect. Mother and Daughter returned to Sonoma County together.

Father thereafter embarked on a near-daily campaign of harassment of Mother, Daughter, and the administration at Daughter's school. From August 2021 to October 2021, he sent Mother at least 53 emails. Mother's attorney emailed Father, asking him to "cease and desist," but he refused. He also telephoned Mother "many times," including calling her 16 times one day and 8 times another day. Mother testified, "I feel so harassed in the way that I cannot have a moment of peace in my life, and I have to remind myself to be calm. And this is [a] huge impact on my daily life."

Father cross-examined Mother, called his sister as a witness, and gave narrative testimony.

###### 2. <u>Trial Court's Findings and Order</u>

At the hearing, the trial court observed that Mother had presented compelling evidence that Father sent mass emails to Mother's colleagues and supervisors at UC Irvine in 2012, expressing concern that Mother had kidnapped Daughter, and that Father provided no credible reason for doing so. The court found that this began Father's "disturbing pattern" and "practice of humiliating, embarrassing, and possibly tampering with [Mother's] medical career." In particular, the court found compelling evidence that Father (1) contacted police and CPS multiple times, claiming without basis that Mother had kidnapped Daughter or that he feared for her health and safety; (2) continued to complain to CPS about Mother even after the first CPS visit produced no evidence of abuse or neglect; (3) threatened to take Daughter away from Mother in 2020–2021 for violations of the

Parenting Plan, even though Father and Mother had verbally modified the plan, causing Mother great emotional pain; (4) refused to return Daughter to Mother in July 2021 unless Mother agreed to certain terms and conditions, forcing Mother to hire attorneys to get Daughter back to Sonoma County; and (5) sent Mother 53 emails despite her attorney requesting that he stop. The court concluded that, although Father had not physically abused Mother or Daughter, he abused Mother emotionally and disturbed her peace within the meaning of section 6320.

Based on these findings, the trial court granted Mother a two-year DVRO. It also granted Mother "temporary" sole legal and physical custody of Daughter, allowing Father visitation by video conference twice per week. Father was ordered to attend individual counseling with a licensed professional. Father filed a timely notice of appeal.

B. <u>Mother's Request for Attorney's Fees and Costs</u>

Mother filed a request to recover her attorney fees and costs. The trial court found that Mother was the prevailing party in the domestic violence trial and, in a written order entered on July 13, 2022, awarded Mother $21,175 in attorney fees and $417.14 in costs, finding that Father had assets from which those amounts could be paid. Father filed an amended notice of appeal to include a challenge to the July 13, 2022 order.

## II. <u>DISCUSSION</u>

### A. <u>DVRO and Custody Order</u>

Father raises a number of challenges to the DVRO and custody order issued by the trial court. We review the court's factual findings for substantial evidence and the grant of a DVRO or child custody order for abuse of discretion. (*In re Marriage of Evilsizor & Sweeney* (2015) 237 Cal.App.4th 1416, 1424 (*Evilsizor*); *Montenegro v. Diaz* (2001) 26 Cal.4th 249,

6

255 [court's ruling is upheld "if it is correct on any basis, regardless of whether such basis was actually invoked"].)  We do not reweigh the evidence. (*M.S. v. A.S.* (2022) 76 Cal.App.5th 1139, 1145; *Phillips v. Campbell* (2016) 2 Cal.App.5th 844, 850–851 [reviewing court "resolve[s] all factual conflicts and questions of credibility in favor of the prevailing party and indulge[s] all reasonable inferences to support the trial court's order"].)  Applying this standard of review, we reject Father's challenges.

### 1. DVRO

Under section 6320, the trial court "may issue an ex parte order enjoining a party from molesting, attacking, striking, stalking, threatening, sexually assaulting, battering, credibly impersonating as described in Section 528.5 of the Penal Code, falsely personating as described in Section 529 of the Penal Code, *harassing, telephoning,* including, but not limited to, making annoying telephone calls as described in Section 653m of the Penal Code, destroying personal property, *contacting, either directly or indirectly, by mail or otherwise,* coming within a specified distance of, or *disturbing the peace of the other party*, and, in the discretion of the court, on a showing of good cause, of other named family or household members."  (§ 6320, subd. (a), italics added.)

"[D]isturbing the peace of the other party" in this context means conduct that "destroys the mental or emotional calm of the other party." (§ 6320, subd. (c).)  It "may be committed . . . by any method or through any means including, but not limited to, telephone, online accounts, text messages, internet-connected devices, or other electronic technologies." (*Ibid*.)  The issue is whether the conduct of the party to be restrained destroyed the calm of the party seeking the restraining order, not whether the conduct would have destroyed the calm of a reasonable person.  (*Parris J.*

7

*v. Christopher U.* (2023) 96 Cal.App.5th 108, 121; see *In re Marriage of Nadkarni* (2009) 173 Cal.App.4th 1483, 1497–1499 (*Nadkarni*) ["disturbing the peace" in section 6320 may be based on the former husband accessing, reading, and publicly disclosing his former wife's confidential emails]; *Evilsizor, supra*, 237 Cal.App.4th at pp. 1419–1420 [DVPA restraining order upheld where the husband downloaded tens of thousands of text messages and other information from his wife's cell phones]; *Burquet v. Brumbaugh* (2014) 223 Cal.App.4th 1140, 1144 [the defendant disturbed the peace of the plaintiff through a "course of conduct of contacting plaintiff by phone, e-mail, and text, . . . and arriving at her residence unannounced and uninvited, and then refusing to leave"].)

Here, the trial court granted the DVRO on the ground that Father emotionally abused Mother and disturbed her peace. Ample evidence, set forth in our summary of the facts and the court's order, supported the court's factual findings. While Father views the evidence differently, he does not demonstrate the absence of substantial evidence or an abuse of discretion in issuing the DVRO.[3]

### 2. Custody

Under the DVPA, the trial court may issue orders pertaining to custody in cases of domestic violence. (§ 6323, subd. (a); § 6340, subd. (a); see also

---

[3] Father distinguishes *Nadkarni* on the ground that the "proper code of conduct expected of Mother and Father in their co-parenting relationship is memorialized" in the 2013 Parenting Plan Guidelines, 2013 Co-Parenting Plan, 2014 Parenting Agreement, and Orange County "[s]tatus [q]uo" order of August 13, 2021. But Father does not demonstrate that this "code" allowed him to do the things the Sonoma County court found he did. Father also points out that, unlike *Nadkarni*, no physical violence is involved here. Section 6320 is clear, however, that physical violence is not required for a DVRO. (*Nadkarni, supra,* 173 Cal.App.4th at p. 1496.)

§ 3040 [court may modify existing custody order ex parte where parent committed recent or ongoing acts of domestic violence].) In addition, other provisions in the Family Code generally authorize the court to modify a prior custody order to promote the best interest of the child. (§ 3087 ["An order for joint custody may be modified or terminated upon the petition of one or both parents or on the court's own motion if it is shown that the best interest of the child requires modification or termination of the order."]; § 3022 ["The court may, during the pendency of a proceeding or at any time thereafter, make an order for the custody of a child during minority that seems necessary or proper."].)

Here, the trial court's order modifying custody was supported by evidence of Father's domestic violence and evidence that Daughter's best interest required the modification. Father threatened to keep Daughter in San Diego and unilaterally enrolled her in a San Diego school, forcing Mother to obtain a court order to secure Daughter's return. From this evidence of Father's refusal to honor the terms of joint custody, along with the overwhelming evidence of continuing domestic violence (in the form of emotional abuse and disturbing Mother's peace), it was reasonable to conclude that circumstances had changed substantially, and that joint physical and legal custody was no longer a viable arrangement. (§§ 6323, subd. (a); 6340, subd. (a); see §§ 3040, 3087, 3022; see also § 3044, subd. (a) [rebuttable presumption that an award of sole or joint custody to a parent who perpetrated domestic violence within the previous five years against the other parent is detrimental to the best interest of the child].)[4] Although the

---

[4] Father argues in his reply brief that the presumption in section 3044 does not apply because he was not seeking custody, citing *In re Marriage of Willis & Costa-Willis* (2023) 93 Cal.App.5th 595. That case is inapposite because it merely held that section 3044 has no application when *neither*

court did not make an express finding regarding Daughter's best interest, the finding was implied from the court's ruling, particularly given the presumption that the court knows and follows the law. (*Heidi S. v. David H.* (2016) 1 Cal.App.5th 1150, 1175.) And while Father questions the sufficiency of the evidence, he fails to demonstrate a lack of substantial evidence.

### 3. Deference to 2014 Orange County Parenting Plan

Father argues that "Sonoma, as transferee court, should give some deference (give a little respect) to court orders, post-divorce parenting agreements, outstanding motions and other court filings transferred from the transferor court, instead of reaching contradictory findings of fact and rulings of law when the two litigations are just two months apart involving the same parties and same set of 10-year long co-parenting disputes (plus 2 more months of conflicts started by Mother)." His argument is unavailing.

The Sonoma County Superior Court was not obligated to follow the Stipulation and Order (and attached parenting plan) issued by the Orange County Superior Court in 2014. By statute, the Sonoma County Superior Court had authority to issue a TRO and DVRO. (§ 6320.) By statute, the trial court also had authority to modify the earlier custody and visitation orders. (§§ 3022, 3087, 6323, 6340.) The court mentioned the 2014 parenting plan, noted that the court had not been asked to invalidate it, and stated it was therefore "*not* addressing [the] issue." (Italics added.) Then, based on the evidence—largely concerning events occurring after the parenting plan— it made findings of fact that justified the DVRO and custody order. A superior court is not powerless to fulfill the purpose of the DVPA and custody

---

party is seeking a change of custody. (*Id.* at pp. 599–602.) Here, Mother did seek a change of custody, Father opposed her request, and custody was plainly at issue. Even without the presumption, however, there is more than enough evidence to support the trial court's conclusion.

10

laws merely because the parties signed a parenting plan years earlier, especially where, as here, the parties' divorce proceeding (including custody orders) had been transferred to that court.[5]

In a similar vein, Father contends that, when a superior court transfers "venue jurisdiction" to another superior court, the transferee court has a duty to "coordinate and communicate with the transferor court to ensure [a] smooth transition and resolution of the case" and is bound by the court orders, findings of fact, and rulings of the transferor court. However, there were no prior orders, findings, or rulings concerning Mother's contention that she needed a DVRO based on the facts presented in her October 2021 application. And contrary to Father's argument, the Sonoma County Superior Court did not "reverse" the Orange County Superior Court's August 2021 "Status Quo Order without explanation." The August 2021 order did not rule on the DVRO application Mother later presented in October 2021.

### 4. Due Process

Father contends the trial court violated his due process rights. He argues: "Because of Sonoma [County's] conflicting sole custody order, without any child's best interest determination, without any child custody evaluation, without appointment of minor's counsel, without in camera interview of Daughter, Father has been deprived of more than 98% of his parental rights, has not been able to spend quality family time with Daughter for two years. Such deprivation of more than 98% [footnote omitted] of

---

[5]     There is no dispute that the Sonoma County Superior Court had jurisdiction in this case. In addition, the venue transfer order gave the Sonoma County Superior Court full authority over the custody and visitation initially addressed in the Orange County proceeding. (Cf. *Thompson v. Thames* (1997) 57 Cal.App.4th 1296, 1303–1308.)

11

Father's parental rights/liberty interest raises constitutional issues under the Due Process Clause."

Father's argument is unpersuasive. Father received notice and a meaningful opportunity to be heard in Sonoma County Superior Court. Substantial evidence supports the trial court's orders. While Father cites cases indicating that parents have due process interests in the parent-child relationship, he does not cite any legal authority demonstrating a deprivation of due process in this case.[6]

### 5. Res Judicata

Father argues that "Mother's second 'domestic violence/sole custody' lawsuit in October 2021 in Sonoma Court should be barred under the Doctrine of Res Judicata, in light of [the] prior sole custody lawsuit in Orange County in August 2021 (just 2 months earlier)." He is incorrect.

The August 2021 order required the return of Daughter to Mother in Sonoma County and Daughter's attendance at school in Sonoma County to uphold the "status quo," with all prior orders remaining in effect to the extent not inconsistent. Father does not establish that the August 2021 order is a final judgment with res judicata effect. (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 823, 825.)

Furthermore, as Father acknowledges in his opening brief, Mother's filing in Sonoma County Superior Court included "*additional* co-parenting conflicts during the venue transfer period (August to October 2021)." (Italics

---

[6] Father contends that "a California family court judge [should] borrow procedural safeguards used in juvenile dependency court proceedings." But Father did not support this contention with legal argument in his opening brief. He has therefore forfeited it. (See *In re Marriage of Falcone & Fyke* (2012) 203 Cal.App.4th 964, 1004 [court of appeal " 'can treat as *waived* or *meritless* any issue that, although raised in the briefs, is *not supported by pertinent or cognizable legal argument or proper citation of authority,*' "].)

added.)  Those acts were obviously not at issue in the Orange County Superior Court when the 2014 Stipulation and Order was issued, and most were not considered in the August 2021 Orange County proceeding.

Father presents no legal authority that a DVRO cannot be issued based on events occurring after a parenting plan is established.  Moreover, new or modified child custody and visitation orders are authorized under the DVPA (§§ 6340, subd. (a) & 6323, subd. (a)), and prior orders are generally modifiable throughout a child's minority if the trial court finds a modification "necessary or proper" in the child's best interests (§ 3022; see §§ 3087, 3088).  As discussed above, there was ample evidence that the custody and visitation order was necessary, proper, and in Daughter's best interest.

### 6. Unclean Hands

Father contends the doctrine of unclean hands precluded Mother's litigation in Sonoma County.  He asserts that Mother's hands were unclean because she violated the August 2021 "Status Quo" order by confiscating the iPhone he gave Daughter and shutting down their communications from August 2021 to October 2021, by filing an allegedly false report with San Diego CPS, by misrepresenting to the Orange County Superior Court that she had Sonoma County witnesses in seeking the venue transfer to Sonoma County, by obtaining a firearm, and by applying for a passport for Daughter with a man pretending to be Father.

However, Father fails to cite to the record to support many of these allegations, and we therefore disregard them.  (*WFG National Title Ins. Co. v. Wells Fargo Bank, N.A.* (2020) 51 Cal.App.5th 881, 894; Cal. Rules of Court, rule 8.204(a)(2)(C).)  He also provides no legal authority for the proposition that the unclean hands doctrine applies to a custody decision or the issuance of a DVRO.  To the extent that he contends Mother's conduct either excuses

13

or eclipses his own, our role is not to reweigh the evidence but only to determine if there is substantial evidence from which a reasonable trier of fact could reach the conclusions of the trial court. (*M.S. v. A.S., supra,* 76 Cal.App.5th at pp. 1143–1145.) That standard is met here.[7]

### 7. Application of Section 6320

Father contends the trial court improperly applied section 6320 (which authorizes a trial court to issue a DVRO) by considering his actions that occurred before the statute was amended effective January 1, 2021. He argues that the court thereby created "an ex post facto law" prohibited by the United States Constitution. We disagree.

As Father points out, in the course of stating its ruling, the trial court read language from section 6320, subdivision (c), which became effective January 1, 2021. Father argues that subdivision (c) expanded the definition of disturbing the peace of the other party, and that while the court could apply that language to his acts after January 1, 2021, it could not apply it to his acts occurring before that date. Father's argument is unavailing.

First, an ex post facto law is one that makes an act a crime after it took place, even though the act was lawful when it was committed. The doctrine does not apply in civil cases like this one. (*Watson v. Mercer* (1834) 33 U.S. 88, 110.)

---

[7] Father argues that "Mother is not a '*victim of domestic violence*' because she does not have clean hands." He provides no authority for this proposition. (See *Dabney v. Dabney* (2002) 104 Cal.App.4th 379, 384 ["We need not consider an argument for which no authority is furnished."]; *In re Marriage of Falcone & Fyke, supra,* 203 Cal.App.4th at p. 1004.) Father also argues that the trial court should have found that Mother committed domestic violence against him. But that issue was not before the court, because Father did not seek a DVRO against Mother.

Second, while Senate Bill No. 1141 added subdivision (c) to section 6320 effective January 1, 2021, the amendment has no effect on this case, because the applicable law was the same before and after the amendment. Long before 2021, case law interpreted " 'disturbing the peace' " under the DVPA to mean conduct that destroys the mental or emotional calm of the other party. (E.g., *Nadkarni, supra,* 173 Cal.App.4th 1483, 1497.) Indeed, the trial court referred to *Nadkarni*—a 2009 case—in rendering its decision. This concept was incorporated into section 6320, subdivision (c), so the statute both before and after 2021 authorized the issuance of a DVRO upon a showing that the mental or emotional calm of the other party had been disturbed. (§ 6320, subd. (c).) And while the latest version of section 6320 goes further and broadens the definition of "disturbing the peace" to include "coercive control"—behavior that "in purpose or effect unreasonably interferes with a person's free will and personal liberty" (§ 6320, subd. (c))— that portion was not critical to the court's findings here.

In the end, the trial court applied the version of section 6320 in effect at the time of its ruling. The statute does not preclude the court from considering acts perpetrated before its amendment as part of a course of conduct establishing that, at the time of the ruling, the threat of abuse or disturbing the peace of another is sufficient to justify the issuance of a DVRO. And even if we looked no further than Father's acts *after* January 1, 2021, there was ample evidence justifying the issuance of the DVRO. Father fails to establish error.

### 8. Denial of Request for Funds to Hire Attorney

On the first day of trial, Father requested an advance of attorney fees so he could hire counsel. He told the trial court: "I am here from San Diego County. I don't have a lawyer in Sonoma. [¶] And in my responsive

declaration I made a request for attorney's fees so that I can hire a lawyer in Sonoma. I spoke with—I interviewed a few lawyers, and it seems that the retainer fee is $10,000, and that there is a parenting agreement where plaintiff is contractually obligated to pay my attorney's fees." The court responded: "All right, Mr. Wang. I just want to start out with, first of all, thank you for being patient here. . . . The request for attorney's fees at this point is denied without prejudice." Father contends the court erred in not granting his request, and he would have fared better at trial if he had counsel. His argument is meritless.

In a proceeding for dissolution of marriage (§ 2030) or for custody pursuant to section 3120 (§ 3121), or in any proceeding following entry of a related judgment, the trial court may award attorney fees and costs based on the parties' relative circumstances to "ensure that each party has access to legal representation" in the case. (§§ 2030, subd. (a)(1); 3121, subd. (a).) "A party who lacks the financial ability to hire an attorney may request, as an in pro per litigant, that the court order the other party, if that other party has the financial ability, to pay a reasonable amount to allow the unrepresented party to retain an attorney in a timely manner before proceedings in the matter go forward." (§§ 2030, subd. (a)(2); 3121, subd. (b).)

We question whether section 2030 or section 3121 apply to DVPA proceedings. But even if they do, Father did not provide the requisite information to the trial court. As stated in the Judicial Council form Father used to respond to Mother's DVRO request, Father was required to file and serve an Income and Expense Declaration (Form FL-150). (See §§ 2030, subd. (e); 3121, subd. (g).) The record does not show that he accompanied his fee request with Form FL-150, provided the information it required, or specified the amount of fees he sought. Although Father states that he

16

requested attorney fees in his response to Mother's request for a DVRO, attaching his FL-300 requests for legal fees *in Orange County*, he does not provide a citation to the record or demonstrate that he provided financial information that would have entitled him to fees and costs in this DVPA proceeding. The court's denial of his request, without a further hearing, was therefore not error.

Moreover, the trial court denied Father's request without prejudice, allowing him to renew the request with proper evidentiary support. He declined to do so. And while Father claims he submitted financial information later, that was in the context of the court determining whether he had assets to pay for Mother's attorney fees after the DVRO had issued. Because the court found his assets were sufficient to pay Mother's fees, there is no indication that the court would have granted Father fees to litigate the case if he had provided his financial information when seeking fees at the start of the trial.

In his reply brief, Father protests that "nothing in the statutory language imposes an affirmative obligation on an unrepresented parent to become an expert in civil procedure, court rules, family law and financial accounting." But parties who litigate without counsel are still required to know and follow proper procedure (*Barton v. New United Motor Manufacturing, Inc.* (1996) 43 Cal.App.4th 1200, 1210), and it should not take much to realize the need to provide financial information when requesting an award of attorney fees.

Father also claims he is entitled to attorney fees and costs pursuant to an attorney fees provision in the parenting plan, which was incorporated into the 2014 Stipulation and Order entered in Orange County. He argues that

the Sonoma County trial court should have enforced those provisions under contract law.

Father's argument is meritless. First, he does not provide a record citation to the attorney fees provision in the parenting plan. Second, we question whether the parenting plan can still be enforced as a contract, since it was attached to and incorporated into the Stipulation and Order. (See *Marriage of Umphrey* (1990) 218 Cal.App.3d 647, 656 [property settlement agreement ceased to operate as an independent legal instrument].) Third, even if the provisions entitling Father to attorney fees could be enforced as part of a court order (or a contract), Father's failure to file the requisite financial information and specify an amount warranted the denial of his request. And finally, contrary to Father's argument, there is no indication that an attorney's assistance would have changed the outcome of the proceeding.

### 9. Limiting Father's Cross-Examination of Mother

Father claims that, if he had been allowed to further cross-examine Mother, he would have impugned her credibility. His claim fails.

It is the trial court's duty to control the trial, including the questioning of witnesses, "so as to make interrogation as rapid, as distinct, and as effective for the ascertainment of the truth, as may be, and to protect the witness from undue harassment or embarrassment." (Evid. Code, § 765, subd. (a).) Among other things, the court has broad discretion to keep cross-examination within reasonable bounds, and it is the court's duty to protect witnesses from intimidation. (*People v. Jones* (1962) 207 Cal.App.2d 415, 421–422, 426.)

Here, after Mother's direct examination had taken only three hours, Father was permitted to cross-examine Mother for two and one-half hours on

18

March 1, 2022, the second day of trial. Father resumed and completed his cross-examination of Mother on March 3, 2022, telling the trial court: "I have no further question[s] for [Mother] . . . . But I'd like to reserve—I'd like to reserve the right to call [Mother] again as my witness, as a hostile witness." Father thereafter called his sister as a witness and testified on his own behalf. When the court asked Father if he had any other witnesses, Father said "No."

Father had a full and fair opportunity to cross-examine Mother. He cannot complain that the trial court denied him further cross-examination, because he was the one who ended the cross-examination and elected not to recall Mother as a witness. Nor has Father shown any reasonable probability that further cross-examination would have yielded a better outcome for him at the trial.

In sum, Father fails to establish that the court erred in issuing the DVRO and custody order.

B. Award of Attorney Fees to Mother

Father argues that the trial court should not have awarded attorney fees to Mother because the "2014 Parenting Agreement governs rights to attorney's fees." Asserting that section 8(a) of the agreement requires Mother to pay Father's legal fees "if Mother initiates any court action," Father contends the provision applies even if Mother is the prevailing party.

Father misrepresents the record (which perhaps explains his lack of record citation). Section 8(a) of the Stipulation and Order on Parenting Plan actually states: "If Mother initiates any court action relating to Daughter's living arrangement or the Co-Parenting Plan *in Pennsylvania*, Mother shall be financially responsible for paying all reasonable legal fees" of Father and

19

his travel expenses.  (Italics added.)  Mother did not commence this case in Pennsylvania.

Moreover, this case was brought under the DVPA.  In a DVPA proceeding, upon request and after notice and hearing, the trial court "shall" award attorney fees and costs to the prevailing petitioner, provided the party ordered to pay has, or is reasonably likely to have, the ability to pay.  (§ 6344, subds. (a), (c).)

Here, the trial court found that Mother was the prevailing party in the DVPA proceeding.  The court considered Mother's request for approximately $30,000 in attorney fees and costs, awarded a lower amount of $21,592.14, and found that Father had assets to cover it.  Father has not shown that the amount awarded by the court was improper or excessive.

## III.  <u>DISPOSITION</u>

The orders are affirmed.

CHOU, J.

We concur.


JACKSON, P. J.
BURNS, J.


*Zeng v. Wang* / A165473