Filed 6/7/13  P. v. Bartz CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H037331 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. 211692) |
| v. | |
| JAMES BARTZ, | |
| Defendant and Appellant. | |

## I. STATEMENT OF THE CASE

Defendant James Bartz appeals from an order converting his involuntary commitment as a mentally disordered offender (MDO) on parole to a post-parole, civil commitment and then extending it.  (Pen. Code, §§ 2962, 2970, 2972.)[1]  He claims the court erred in failing to advise him of his right to a jury trial, accepting counsel's jury waiver, and conducting a bench trial.

We affirm the extension order.

## II. BACKGROUND AND PROCEDURAL HISTORY

On November 3, 2006, a man was standing on his property when defendant attacked him with either a pipe or a wooden stake, kicked him in the head, clawed his

---

[1] All unspecified statutory references are to the Penal Code.

eyes, punched him, and bit his finger. At the time, defendant had been off his psychotropic medication for a month and was suffering from the delusional belief that the man was trespassing and he needed to protect his property. After the attack, defendant asked the man if he wanted to go have a drink but then ran off.

In February 2006, defendant was convicted of assault with a deadly weapon (§ 245, subd. (a)(1)) and sent to prison. He was released on parole in January 2008, but in April 2008, his parole was revoked after his arrest for public drunkenness. In June 2008, defendant was sent to San Quentin and then transferred to Atascadero State Hospital (ASH), where he was certified as an MDO. (§ 2962.)

In August 2010, defendant was moved to a less structured, state transitional residential program called Northstar, and in November 2010, he was released for outpatient treatment to Harper Medical Group (Harper) under the South Bay Conditional Release program. However, in December 2010, after only a few weeks at Harper, defendant packed a bag and absconded. An arrest warrant was issued.

On February 16, 2011, the Santa Clara County District Attorney filed a petition to convert and extend defendant's MDO commitment. In July 2011, defendant was arrested. At a pretrial hearing on August 19, 2011, counsel appeared and waived a jury trial. On August 31, 2011, after a bench trial, the court sustained the petition, converted defendant's commitment, and extended it until September 11, 2012.

### III. THE EXTENSION TRIAL

Kristine Campbell, MFT, testified as an expert in the diagnosis and treatment of mental disorders and risk assessment. She evaluated defendant at ASH and was his case supervisor at Harper. She said that defendant was diagnosed with schizo-affective disorder, bi-polar type, polysubstance dependence, and antisocial personality disorder. She testified that defendant had a long criminal history involving alcohol and drug related offenses, domestic violence, robbery, burglary, and assault.

2

Ms. Campbell met with defendant regularly in groups and for individual therapy until he absconded. She testified that he had been long history of psychosis was still "struggling with reality testing." At one point, he told her that without the support at Harper, he would likely start using drugs and alcohol again, reoffend, and end up incarcerated. He also admitted being an alcoholic and drug addict.

Ms. Campbell recommended that defendant's commitment be extended. She noted that he had an extensive history of noncompliance with treatment and medication. She opined that without supervision and medication, defendant's delusions would return. They included a belief that he was Satan, that he owned everything, and that people were following him. Ms. Campbell did not know whether defendant was currently taking his medication to control his symptoms. However, she opined that it was unlikely that his mental condition was in remission, given how long defendant had been psychotic—10 years—the period of time that he had not been in a structured program, the likelihood that he had not taken medication during the seven months after he had absconded. She testified that defendant needed a significant period of time to restabilize with his medication before his condition could be considered in remission. She also believed that he would benefit from mental health treatment. She opined that at present, he currently posed a risk to others if released.

Defendant admitted that he had not been taking any medication, but he denied that he needed it. He did not recall telling Ms. Campbell that without supervision, he would relapse and be reincarcerated. Defendant said he knew that absconding violated parole but he left Harper anyway. He explained that he was not supposed to drink but knew that he would and left to avoid having to report. He said that his pattern is to drink, abscond, and get arrested until his parole period expires.

Defendant denied being an alcoholic but acknowledged having a number of alcohol related convictions and using every kind of drug available on the street.

3

Defendant admitted attacking the victim and conceded that the man was not trespassing on defendant's property. However, he was not sure the man was on his own property, adding that "there's a little more to the story than that . . . ."

Defendant denied ever believing that he was Satan but admitted having his family look into the fact that the number "0666" was on his birth certificate. He also admitted to being concerned at times about people following him.

Defendant denied suffering from schizo-affective disorder or ever having delusions or hallucinations. He said that in prison, he heard how it was possible to feign mental illness in order to get medication, his own cell, and social security. However, defendant admitted having antisocial personality disorder, which he described as being more logical than emotional. "It means I'm not led by my emotions, which to me is a benefit, you know. Say, you know, I have a love for my family and my family runs a business or doing something illegal, you know, and I know they're wrong, but because I love my family it's okay if they did that, you know. Do you understand?" He continued, "I'm not led by it. The same thing with maybe a relationship between a man and a woman and they fall in love, and because of that it turns to hate and then somebody ends up dead. But—so I don't really have a love for my family—this may sound negative, but I don't have really a love for anything except for, you know, my survival, things that I need to do."

Defendant explained that once he left Harper, he and a girlfriend went to Santa Cruz and then to San Leandro, where he was arrested. He admitted that after he left Harper, he drank alcohol and smoked marijuana even though he knew he was violating parole.

### IV. MOOTNESS

The extension period of defendant's commitment has expired, and therefore the propriety of the court's order is now moot. Thus, it may not appear necessary to address defendant's claims of error concerning the jury advisement, lack of personal waiver, and

4

bench trial. However, "we review the merits of appeals from timely filed petitions that are rendered technically moot during the pending of the appeal, . . . because the appellant is subject to recertification as an MDO, and the issues are otherwise likely to evade review due to the time constraints of MDO commitments. [Citations.]" (*People v. Merfield* (2007) 147 Cal.App.4th 1071, 1074.)

## V. THE MDO COMMITMENT SCHEME AND EXTENSION PROCEDURE

When persons who have been convicted of a violent crime related to their mental disorders are eligible for release but currently pose a danger of harm to others, the Mentally Disordered Offender Act (the Act) (§ 2960 et seq.) permits their involuntary commitment to a state hospital for treatment until their disorders can be kept in remission. (*In re Qawi* (2004) 32 Cal.4th 1, 9 (*Qawi*); see *Lopez v. Superior Court* (2010) 50 Cal.4th 1055, 1061 (*Lopez*) [the MDO Act has the dual purpose of protecting the public while treating severely mentally ill offenders].)

The Act provides treatment at three stages of commitment: as a condition of parole, in conjunction with the extension of parole, and following release from parole. (*Lopez, supra*, 50 Cal.4th at p. 1061.) "Sections 2970 and 2972 govern the third and final commitment phase, once parole is terminated. If continued treatment is sought, the district attorney must file a petition in the superior court alleging that the individual suffers from a severe mental disorder that is not in remission, and that he or she poses a substantial risk of harm. (§ 2970.)" (*Lopez, supra*, 50 Cal.4th at p. 1063.)

Section 2972, subdivision (a) provides, among other things, that when a petition is filed, the court "shall advise the person . . . of the right to a jury trial"; and "the trial shall be by jury unless waived by both the person and the district attorney."[2] (§ 2972.) To

---

[2] Section 2972, subdivision (a) provides, "(a) The court shall conduct a hearing on the petition under Section 2970 for continued treatment. The court shall advise the person of his or her right to be represented by an attorney and of the right to a jury trial. The attorney for the person shall be given a copy of the petition, and any supporting documents. The hearing shall be a civil hearing, however, in order to reduce costs the

5

obtain an extension, the district attorney must prove, and the trier of fact must find beyond a reasonable doubt, that (1) the person continues to have a severe mental disorder; (2) the person's mental disorder is not in remission or cannot be kept in remission without treatment; and (3) the person continues to represent a substantial danger of physical harm to others. (*Lopez, supra*, 50 Cal.4th at p. 1063; *People v. Beeson* (2002) 99 Cal.App.4th 1393, 1398-1399; § 2972, subds. (c), (e).)

## VI. DISCUSSION

Defendant contends that the court erroneously denied him the right to a jury trial because it failed to give the required jury advisement, failed to obtain an express, personal jury waiver from him, and instead accepted counsel's waiver.

### A. FAILURE TO ADVISE

Section 2972, subdivision (a) requires the court to "advise the person of his or her right . . . to a jury trial." This language imposes a mandatory duty on the court.[3] (*Tarrant Bell Property, LLC v. Superior Court* (2011) 51 Cal.4th 538, 542 [" 'shall' " typically construed as mandatory; e.g., *People v. Tindall* (2000) 24 Cal.4th 767, 772.)

It is undisputed that the court did not directly advise defendant on the record before trial. The record reveals that counsel waived defendant's presence at a number of pretrial status hearings before and after defendant's arrest. Defendant did not make his first appearance until March 17, the day of the bench trial. Nevertheless, the court's failure to give the required advisement does not compel reversal.

rules of criminal discovery, as well as civil discovery, shall be applicable. [¶] The standard of proof under this section shall be proof beyond a reasonable doubt, and if the trial is by jury, the jury shall be unanimous in its verdict. The trial shall be by jury unless waived by both the person and the district attorney. The trial shall commence no later than 30 calendar days prior to the time the person would otherwise have been released, unless the time is waived by the person or unless good cause is shown."

[3] We mean "mandatory" in its obligatory, rather than jurisdictional, sense as in a required, rather than discretionary, action. (See *Morris v. County of Marin* (1977) 18 Cal.3d 901, 908 [discussing distinction].)

Before any judgment can be reversed for error under state law, it must appear that the error complained of "has resulted in a miscarriage of justice." (Cal. Const., art. VI, § 13; *Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 801.) This means that reversal is justified "when the court, 'after an examination of the entire cause, including the evidence,' is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*).)

It is beyond dispute that counsel was aware of defendant's right to a jury trial. Where, as here, counsel waives an MDO's presence at pretrial hearings, effectively preventing a direct judicial advisement before trial, the court may reasonably expect counsel to discuss all pertinent matters that will arise or that have arisen in pretrial hearings, including the right to a jury trial and whether to have one. Indeed, "[l]ike all lawyers, the court-appointed attorney is obligated to keep her client fully informed about the proceedings at hand, *to advise the client of his rights*, and to vigorously advocate on his behalf. [Citations.] The attorney must also refrain from any act or representation that misleads the court. (Bus. & Prof.Code, § 6068, subd. (d); Rules Prof. Conduct, rule 5–200(B).)" (*In re Conservatorship of Person of John L.* (2010) 48 Cal.4th 131, 151-152, italics added.) Moreover, absent a showing to the contrary, "[a] reviewing court will indulge in a presumption that counsel's performance fell within the wide range of professional competence and that counsel's actions and inactions can be explained as a matter of sound trial strategy." (*People v. Carter* (2003) 30 Cal.4th 1166, 1211; *Conservatorship of Ivey* (1986) 186 Cal.App.3d 1559, 1566; e.g., *Conservatorship of Mary K.* (1991) 234 Cal.App.3d 265, 272 [where no evidence to the contrary, court may presume counsel discussed jury waiver with client before waiving on client's behalf].)

Under the circumstances, and in the absence of evidence to the contrary, we may presume that counsel discussed the jury issue with defendant.

Moreover, on appeal, the appellant bears the burden to affirmatively establish error and then demonstrate that it resulted in a miscarriage of justice that requires reversal. (*Cucinella v. Weston Biscuit Co.* (1954) 42 Cal.2d 71, 82; *Freeman v. Sullivant* (2011) 192 Cal.App.4th 523, 528; *Paterno v. State of California* (1999) 74 Cal.App.4th 68, 105-106; *Thompson v. Thames* (1997) 57 Cal.App.4th 1296, 1308; see 9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 355, p. 409 [presumption of correctness; "error must be affirmatively shown"].)

Here, the record does not suggest that defendant was unaware that counsel intended to waive a jury and had done so or that counsel acted without defendant's knowledge or consent or that defendant wanted a jury trial and objected (or would have objected) to counsel's waiver. Any such inferences would be pure speculation on our part.[4]

Last, we note that a single opinion by a psychiatric expert that the defendant is currently dangerous due to a mental disorder can constitute substantial evidence to support the extension of a commitment. (*People v. Zapisek* (2007) 147 Cal.App.4th 1151, 1165; *People v. Bowers* (2006) 145 Cal.App.4th 870, 879.)

The testimony of Ms. Campbell constitutes overwhelming evidence to support the court's finding that defendant posed a risk of harm due to mental disorders that were not in remission. She testified that defendant suffered from schizo-affective disorder, polysubstance dependence, and antisocial personality disorder and had delusions like the one that led to his commitment offense. Defendant denied having that disorder but admitted having anti-personality disorder, but understood it to mean putting one's

---

[4] If, in fact, defendant was unaware of his right to a jury trial and would have opposed or did oppose counsel's waiver, but the evidence to establish these facts lay outside the record on appeal, defendant had the alternative a remedy of habeas corpus to challenge his commitment on the ground of ineffective assistance of counsel. (See *People v. Gray* (2005) 37 Cal.4th 168, 211 [claims grounded in facts outside the record can be raised by habeas petition]; *In re Bower* (1985) 38 Cal.3d 865, 872.)

8

survival first and thinking logically rather than emotionally. Although defendant denied having delusions or hallucinations, he admitted that at times he thought people were following him.

Given defendant's long criminal history of alcohol and drug related violent offenses, psychosis, and lack of compliance with treatment, Ms. Campbell considered it likely that defendant would not take medication if released, without it, his psychotic delusions were likely to resurface and render him dangerous. Indeed, defendant admitted to her, in essence, that he would relapse into substance abuse without supervision, and in fact, after absconding he did.

Other than his own testimony, defendant offered no evidence that contradicted or undermined Ms. Campbell's expert testimony.

Under the circumstances, we do not find it reasonably possible, let alone reasonably probable, that defendant would have obtained a more favorable result had the court ordered his presence before trial to expressly advise him about the right to a jury trial. (*Watson, supra,* 46 Cal.2d at p. 836; cf. *People v. McClellan* (1993) 6 Cal.4th 367, 377, 378 [failure to advise about sex registration requirement harmless].)[5]

### B. Failure to obtain Personal Waiver

Defendant claims that the Act requires the court to conduct a jury trial unless it obtains the MDO's personal waiver. Recently, in *People v. Blackburn* (2013) 156 Cal.App.4th 809 [156 Cal.Rptr.3d 106, 112-115] (*Blackburn*), we addressed and rejected this claim.

---

[5] We do not intend to suggest that it was improper or inappropriate for counsel to waive defendant's presence or that the court had a duty to order defendant's presence in order to directly advise him. However, a direct advisement is not the only way for the court to ensure that an MDO is made aware of the right to a jury trial. In our view, the practical difficulty in advising an MDO committed to a state hospital could easily be solved with an advisement and waiver form for the MDO read and sign. (See *People v. Ramirez* (1999) 71 Cal.App.4th 519, 521-522 [waiver form proper substitute for judicial advisement].)

9

We noted that the claim previously had been rejected in *People v. Otis* (1999) 70 Cal.App.4th 1174 (*Otis*) and *People v. Montoya* (2001) 86 Cal.App.4th 825, 829 (*Montoya*). Those courts noted that the statutory language did not expressly require a personal waiver; nor did it clearly preclude a waiver by counsel. The courts also declined to infer such a requirement because some MDOs may not be sufficiently competent to determine whether a bench or jury trial is in his or her best interests. Under those circumstances, the MDO must act through counsel, and counsel must have authority to act, even over the objection of such an MDO. (*Otis*, *supra*, 70 Cal.App.4th at pp. 1176-1177; *Montoya*, *supra*, 86 Cal.App.4th 830-831; cf. *People v. Powell* (2004) 114 Cal.App.4th 1153, 1157-1159 (*Powell*) [relying on *Otis* to reject a claim that similar language in section 1026.5 required personal jury waiver].)

In *Blackburn*, we agreed with *Otis* and *Montoya*. (*Blackburn, supra*, 215 Cal.App.4th at pp. ___ [156 Cal.Rptr.3d at p. 113].) In addition, we opined that interpreting the statutory language to require a personal waiver resulted in consequences that were illogical and anomalous. (*Ibid.*) We noted that for a variety of reasons, MDOs often do not appear in court until the day of trial. We considered it was illogical to prohibit counsel from waiving the statutory right to a jury trial at the MDO's direction or with the MDO's express consent and instead require the court to order the MDO's presence at some pretrial hearing just to secure a personal waiver because counsel can waive a client's more fundamental constitutional right to a jury trial in civil actions. (*Id.* at p.114; see (Cal. Const., art. I, § 16 [right to jury trial]; Code of Civ. Proc, § 631 [prescribing types of waiver]; *Zurich General Acc. & Liability Ins. Co. v. Kinsler* (1938) 12 Cal.2d 98, 105 (*Zurich*) [waiver by party or counsel], overruled on other grounds in *Fracasse v. Brent* (1972) 6 Cal.3d 784, 792; *Cadle Co. v. World Wide Hospitality Furniture, Inc.* (2006) 144 Cal.App.4th 504, 510; *Conservatorship of Maldonado* (1985) 173 Cal.App.3d 144, 148; see Code Civ. Proc., § 283, subd. (1) [counsel has authority to bind client in any of the steps of an action].)

10

We further observed that some MDO may be so delusional or otherwise affected by their mental disorders that they lack the capacity to know what is in their own best interests and make a rational decision. Under such circumstances, an MDO may not be able to knowingly and intelligently waive the right to a jury trial. We opined that "[i]f an MDO is incompetent, and in a particular case counsel believes that a jury waiver is in the MDO's best interests, requiring that MDO's personal waiver would undermine counsel's ability to protect the MDO's interests and mechanically require the court to conduct a jury trial or give the incompetent defendant veto power over counsel's informed determination." (*Blackburn, supra*, 215 Cal.App.4th at p. ___ [156 Cal.Rptr.3d at p. 113].)

In short, we found that "preventing counsel from waiving a jury at the NGI defendant's direction or with the MDO's consent and preventing counsel from doing so on behalf of an incompetent MDO are anomalous consequences that would flow from interpreting the waiver provision literally and restrictively to require a personal waiver." (*Blackburn, supra*, 215 Cal.App.4th at p. ___ [156 Cal.Rptr.3d at p. 113].) For that reason, we considered it unreasonable to infer such a restrictive and exclusive legislative intent from the statutory language. (*Ibid*.)

Defendant urges us not to follow *Otis*—and presumably *Montoya*—because *Otis* is factually distinguishable. He notes that the MDO in *Otis* was delusional and thus not sufficiently competent to make a rational decision. Here, on the other hand, there was no evidence or testimony suggesting that he was not capable of rationally deciding between a bench and jury trial.

We acknowledge this distinction. However, it makes no difference. The *Otis* and *Montoya* courts declined to interpret the Act to require a personal waiver not because the MDO in that particular case was delusional but because in general, the requirement would prevent counsel from protecting the interests of MDOs who are not sufficiently competent to know what was in their own best interests. That the MDO in that case was

11

delusional is what allowed the court to uphold counsel's waiver *over the MDO's objection*.

Defendant also claims that *Otis* erroneously presumes that all MDOs are not sufficiently competent to decide between a bench and jury trial. We agree that MDOs should not be considered categorically incompetent to control the decision of whether to have a jury trial. However, *Otis* does not purport to make such a presumption.

In *Otis*, *supra*, 70 Cal.App.4th at 1174, counsel waived a jury trial. The defendant objected and requested a jury trial, but at the time, he was experiencing delusions that he was being sexually assaulted by invisible police. The court denied the request. On appeal the defendant claimed that the Act required his personal waiver. As noted, the court disagreed and upheld the waiver over the defendant's objection. In doing so, the court further explained that the Act "concerns persons who have been found by the Board of Prison Terms to be mentally disordered. The Legislature must have contemplated that many persons, *such as Otis*, might not be sufficiently competent to determine their own best interests. There is no reason to believe the Legislature intended to leave the decision on whether trial should be before the court or a jury in the hands of such a person." (*Id.* at pp. 1176-1177.)

In *Blackburn*, we understood *Otis* in light of its facts and the issues raised. (See *Ginns v. Savage* (1964) 61 Cal.2d 520, 524, fn. 2 ["[l]anguage used in any opinion is of course to be understood in the light of the facts and the issue then before the court"].) Given the mental state of the defendant in *Otis*, we read it to hold "that when an MDO appears to be incapable of determining whether a bench or jury trial is in his or her best interests, the MDO must act through counsel, and counsel has exclusive authority to decide even over the MDO's objection." (*Blackburn, supra*, 152 Cal.App.4th at p. ___ [156 Cal.Rptr.3d at p. 122].) We concluded that it could not be read more broadly to hold that counsel controls the jury issue regardless of whether the MDO is competent to understand the advisement and make a reasoned decision. (*Ibid.*)

12

### C. Failure to Conduct Jury Trial

Given our analysis, it is clear that the court did not err in failing to obtain an express, personal waiver from defendant himself. Nevertheless, the propriety of the bench trial depends on whether counsel's waiver was valid. However, on the record before us, defendant cannot satisfy his burden to establish that counsel's waiver was invalid or that the court erred in accepting it.

As noted, we may presume that counsel discussed the jury issue with defendant. Moreover, it is mere speculation to find that defendant was unaware that counsel intended to waive a jury and had done so or that counsel acted without defendant's knowledge or consent or that defendant wanted a jury trial and objected (or would have objected) to counsel's waiver.

Moreover, even if defendant could show that counsel acted without his knowledge and consent or over his objection, he could not establish prejudice. In this regard, it is settled that the erroneous denial of a statutory right to a jury trial is subject to harmless-error review under the *Watson* test which asks whether it is reasonably probable the result would have been more favorable had there been a jury trial. (*People v. Epps* (2001) 25 Cal.4th 19, 29.)

Our *Watson* analysis concerning the court's failure to advise applies with equal force to the alleged erroneous denial of a jury trial. Given Ms. Campbell's and defendant's testimony, we do not consider it reasonably possible, let alone reasonably probable, that a jury would have returned a verdict more favorable than the court's verdict. (*People v. Watson, supra,* 46 Cal.2d at p. 836; e.g., *People v. Cosgrove* (2002) 100 Cal.App.4th 1266, 1276 [denial of statutory right to MDO trial harmless].)

### D. Constitutional Claims

Defendant contends that in conducting a bench trial, the court denied his constitutional right to a jury trial under the state and federal due process and equal protection clauses.

13

## 1. Due Process

Defendant theorizes that if the Act did not provide the right to a jury trial, he would still have the right under the state and federal constitutional guarantees of due process. He argues that the court's procedure in this case violated this constitutional right. However, since there is a statutory right, defendant's due process claim is based upon an assumption which is contrary to the state of existing law. We will not decide theoretical constitutional questions which are based upon faulty premises. (*People v. Moore* (2011) 51 Cal.4th 1104, 1123 [rejecting equal protection argument based on faulty premise]; *People v. Low* (2010) 49 Cal.4th 372, 393, fn. 11 [due process claim challenging state's actions rejected where argument based upon faulty premise that defendant committed no unlawful act]; *Berardi v. Superior Court* (2008) 160 Cal.App.4th 210, 228 [court will not decide "hypothetical or other questions of constitutional law unnecessary to our disposition of the case"].)

Moreover, we note that in *Montoya, supra,* 86 Cal.App.4th 825, the court rejected the MDO's claim that the federal due process clause guaranteed an MDO the right to a jury trial. " 'Where . . . a State has provided for the *imposition of criminal punishment* in the discretion of the trial jury, it is not correct to say that the defendant's interest in the exercise of that discretion is merely a matter of state procedural law. The defendant in such a case has a substantial and legitimate expectation that he will be deprived of his liberty only to the extent determined by the jury in the exercise of its statutory discretion, [citation], and that liberty interest is one that the Fourteenth Amendment preserves against arbitrary deprivation by the State.' [Citation.] A jury sitting in a civil hearing pursuant to sections 2970 and 2972 does not impose criminal punishment and has no power to determine the extent to which the defendant will be deprived of his liberty. Defendant's jury trial interest thus is, in this case, 'merely a matter of state procedural law' and does not implicate the Fourteenth Amendment. [Citation]." (*Id*. at pp. 831-832, quoting *Hicks v. Oklahoma* (1980) 447 U.S. 343, 346 (*Hicks*); cf. *Powell, supra*, 114

14

Cal.App.4th at p. 1159 [rejecting NGI's claim that denial of jury trial violated constitutional right to due process].)

Defendant cites *In re Gary W.* (1971) 5 Cal.3d 297, *People v. Feagley* (1975) 14 Cal.3d 338, *People v. Thomas* (1977) 19 Cal.3d 630, and *In re Hop* (1981) 29 Cal.3d 82 for the proposition that due process guarantees the right to a jury trial in commitment cases.

In these cases, the court found that persons facing involuntary commitment under statutory schemes that did *not* provide for a jury trial were similarly situated to persons facing commitment under schemes that provided a jury trial upon request. Thus, under the equal protection clause, the former group is entitled to request a jury trial unless there is a valid justification for not allowing them to do so. And if there is no such valid justification, the unequal treatment is arbitrary and violates due process. However, none of these cases separately analyzed whether, apart from arbitrarily treating similarly situated persons differently, the due process clause independently guarantees persons subject to civil commitment the right to a jury trial. Accordingly, we find defendant's reliance on them to be misplaced.

Moreover, while the arbitrary denial of a statutory right may violate the constitutional guarantee of due process, the record here does not establish that the court's failure to advise defendant and failure to conduct a jury trial were arbitrary. Counsel waived defendant's presence at every hearing before trial, and he also waived a jury trial. Again, we do not presume error, and, as noted, because defendant has not shown that counsel's waiver was unauthorized or otherwise invalid, he can no more show a constitutional violation than he could show a statutory violation. Accordingly, we reject defendant's due process claim.

### B. Equal Protection

Defendant asserts that in every scheme permitting the involuntary commitment of a person for mental health purposes, there is a right to a jury trial. He further asserts that

15

an MDO defendant facing an extended commitment is similarly situated to persons facing a commitment under these other schemes.  Thus, he claims that in conducting a bench trial here, the court denied him equal protection.  Defendant's claim fails because the Act provides defendant with the right to a jury trial, and counsel waived that right.  Thus, defendant fails to identify how he was treated differently from how he would have been treated under any of the other commitment schemes.

## VII.  DISPOSITION

The order extending defendant's commitment is affirmed.

_____
RUSHING, P.J.

I CONCUR:

_____
PREMO, J.

ELIA, J., Concurring

I respectfully concur in the judgment on the ground that no reversible error has been shown.  (Cal. Const., art. VI, § 13; *People v. Watson* (1956) 46 Cal.2d 818, 836.) We must presume for purposes of this appeal that appellant's counsel informed appellant that he was entitled to be tried by a jury and counsel waived a jury trial in accordance with appellant's informed consent (see maj. opn., *ante*, p. 2).  (See *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 [all presumptions are indulged to support a judgment or order regarding matters as to which the record is silent; error must be affirmatively shown]; see also *Conservatorship of John L.* (2010) 48 Cal.4th 131, 148 ["When a statutory right in a civil commitment scheme is at issue, the proposed conservatee may waive the right through counsel if no statutory prohibition exists.  [Citations.]"], 151-152 [attorney is obligated to keep client fully informed of proceedings, to advise client of his rights, and to refrain from any act or representation that misleads the court].)

Even assuming arguendo that appellant had a constitutional right to a jury trial as a matter of due process, the same presumption regarding waiver applies on appeal.  (See *Denham v. Superior Court, supra,* 2 Cal.3d at p. 564; *Conservatorship of John L., supra,* 48 Cal.4th at pp. 151-152.)  To the extent appellant is arguing that he had concomitant due process rights, under either the United States or California Constitution, to a judicial advisement of his right to a jury trial and to personally waive a jury on the record, his arguments are unpersuasive since he was represented by counsel who presumably advised and consulted with him and there is no constitutional provision explicitly requiring an express, personal waiver of a jury in noncriminal proceedings.  (See Cal. Const., art. I, § 16; cf. Code Civ. Proc., § 631; *People v. Bradford* (1997) 14 Cal.4th 1005, 1052-1053 [in criminal prosecution, no express, personal waiver from a defendant is required for waiver of constitutional right to testify; a trial judge may safely assume that a nontestifying defendant is abiding by his counsel's trial strategy].)

Consequently, it is unnecessary in this case to repeat the majority's conclusions in *People v. Blackburn* (2013) 215 Cal.App.4th 809 regarding the exact extent of a counsel's authority to waive a jury for trial on a petition for continued treatment (Pen. Code, §§ 2970, 2972). As the United States Supreme Court stated: "The duty of this court, as of every other judicial tribunal, is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." (*Mills v. Green* (1895) 159 U.S. 651, 653 [16 S.Ct. 132]; see *Eye Dog Foundation v. State Board of Guide Dogs for the Blind* (1967) 67 Cal.2d 536, 541.)

_____

ELIA, J.

2