Filed 7/22/13  P. v. Kieu CA6

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H037733 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. CC270807) |
| v. | |
| HUNG THANH KIEU, | |
| Defendant and Appellant. | |

## I.  STATEMENT OF THE CASE

Defendant Hung Thanh Kieu appeals from an order extending his involuntary commitment as a mentally disordered offender (MDO).  (Pen. Code, §§ 2970, 2972.)[1]  He claims the court erred in failing to advise him of his right to a jury trial and obtain his personal jury waiver, accepting counsel's jury waiver, and conducting a bench trial.

We affirm the extension order.

## II.  BACKGROUND AND PROCEDURAL HISTORY

On December 8, 2002, defendant stabbed a 53-year-old woman living at his parents' house.  He thought she was being disrespectful to his mother and grandmother.  At the time, he was delusional and heard voices tell him that if he did not hurt the victim, she would get back at him.

---

[1]  All unspecified statutory references are to the Penal Code.

In April 2003, defendant was convicted of assault with a deadly weapon (§ 245, subd. (a)(1)) and sent to prison. In 2005, he was certified as an MDO and involuntarily committed to Atascadero State Hospital (ASH) for treatment as a condition of parole. (§ 2962.) Before the parole commitment expired, it was converted to a civil commitment and extended. (§2970, 2972.) In 2009, defendant was transferred to Napa State Hospital (NSH). On July 22, 2011, before defendant's commitment expired, the Santa Clara County District Attorney filed a petition to extend it. At a pretrial hearing on August 19, 2011, counsel appeared and waived a jury trial. On October 27, 2011, after a bench trial, the court sustained the petition and extended defendant's commitment until November 17, 2012.

### III.  THE EXTENSION TRIAL

Dr. Anita Sachdev, M.D., a staff psychiatrist at NSH, testified as an expert in the diagnosis and treatment of mental disorders and risk assessment. She was defendant's treating psychiatrist and had been for almost a year. She testified that defendant suffered from paranoid schizophrenia, had experienced hallucinations and persecutory delusions, and had manifested thought disorder and disorganized behavior.

Dr. Sachdev reported that during a recent session, defendant exhibited paranoia toward male staff member because of hand gestures he found offensive. He thought another staff member was being manipulative in order to "move up the ladder." Defendant also became suspicious and paranoid toward an interpreter who had suggested a symptom management group that she thought would be beneficial. He had no interest in the group and wanted a new interpreter. However, he later agreed to continue with her. Dr. Sachdev noted, however, that defendant had agreed not to be aggressive toward anyone.

According to Dr. Sachdev, defendant acknowledged his schizophrenia and knew that hallucinations were a symptom of his disorder. He also acknowledged that he had

2

heard voices when he stabbed his victim. However, Dr. Sachdev opined that despite his awareness, defendant failed to recognize that his ongoing suspiciousness and paranoia were also symptoms of his disorder. This was cause for concern because paranoia played a part in the underlying offense as well as a separate incident in which defendant stabbed a coworker who had touched his shoulder. Moreover, although defendant took his medication regularly, and it had eliminated his auditory hallucinations, it had not eliminated his suspiciousness or paranoia. Accordingly, defendant's relapse prevention plan focused on learning to better recognize those symptoms.

Dr. Sachdev explained that when defendant was symptomatic, he had difficulty controlling his behavior. She opined that if he stopped taking his medication and his more serious symptoms resurfaced, he could become dangerous again. She also believed that he could be dangerous even when he experienced fleeting paranoia.

Given her concern that defendant would stop taking his medication without monitoring and supervision and concern about his recent suspiciousness and paranoia toward staff, Dr. Sachdev opined that defendant was not ready for unconditional release. However, she said defendant had made good progress, and treatment staff would consider him for conditional release on outpatient status once he developed a better understanding of his paranoid tendencies. In this regard, she noted that in addition to taking his medication, defendant had not had any behavioral outbursts, and he had participated in treatment and fitness groups and was improving his English skills.

Richard Kepner, Ph.D., also testified as an expert in the diagnosis and treatment of mental disorders and risk assessment. Defendant was his patient and participated in his wellness and recovery action plan (WRAP) group, which helps MDOs formulate relapse prevention plans. He testified that defendant's plan identified some of the triggers of his mental disorder, but he needed to develop greater understanding of his suspicious and paranoid thinking. Dr. Kepner considered defendant's reaction of distrust and

3

suspiciousness toward his interpreter to be symptomatic of his paranoia. Defendant's inability to understand this was a concern to his treatment team. Dr. Kepner also considered defendant's reaction to staff members to be symptomatic of his mental illness, and as a precaution, he warned the staff to be watchful.

Dr. Kepner opined that because defendant was unable to recognize suspiciousness and paranoia as symptoms of his schizophrenia, his relapse prevention plan focused on improving his recognition. For the time being, Dr. Kepner was concerned that defendant's release without supervision could lead to violence because suspiciousness and paranoia were evidence in his underlying offense.

Defendant did not testify and submitted the matter without any evidence.

## IV. MOOTNESS

The extension period of defendant's commitment has expired, and therefore the propriety of the court's order is now moot. Thus, it may not appear necessary to address the merits of defendant's claims. However, "we review the merits of appeals from timely filed petitions that are rendered technically moot during the pending of the appeal, . . . because the appellant is subject to recertification as an MDO, and the issues are otherwise likely to evade review due to the time constraints of MDO commitments. [Citations.]" (*People v. Merfield* (2007) 147 Cal.App.4th 1071, 1074.)[2]

## V. THE MDO COMMITMENT SCHEME AND EXTENSION PROCEDURE

When persons who have been convicted of a violent crime related to their mental disorders are eligible for release but currently pose a danger of harm to others, the Mentally Disordered Offender Act (the Act) (§ 2960 et seq.) permits their involuntary commitment to a state hospital for treatment until their disorders can be kept in remission. (*In re Qawi* (2004) 32 Cal.4th 1, 9 (*Qawi*); see *Lopez v. Superior Court*

---

[2] For this reason, we reject the Attorney General's claim defendant forfeited his claims by failing object to the bench trial.

4

(2010) 50 Cal.4th 1055, 1061 (*Lopez*) [the MDO Act has the dual purpose of protecting the public while treating severely mentally ill offenders].)

The Act provides treatment at three stages of commitment:  as a condition of parole, in conjunction with the extension of parole, and following release from parole. (*Lopez, supra*, 50 Cal.4th at p. 1061.)  "Sections 2970 and 2972 govern the third and final commitment phase, once parole is terminated.  If continued treatment is sought, the district attorney must file a petition in the superior court alleging that the individual suffers from a severe mental disorder that is not in remission, and that he or she poses a substantial risk of harm.  (§ 2970.)"  (*Lopez, supra*, 50 Cal.4th at p. 1063.)

Section 2972, subdivision (a) provides, among other things, that when a petition is filed, the court "shall advise the person . . . of the right to a jury trial"; and "the trial shall be by jury unless waived by both the person and the district attorney."[3]  (§ 2972.)  To obtain an extension, the district attorney must prove, and the trier of fact must find beyond a reasonable doubt, that (1) the person continues to have a severe mental disorder; (2) the person's mental disorder is not in remission or cannot be kept in remission without treatment; and (3) the person continues to represent a substantial danger of physical harm to others.  (*Lopez, supra*, 50 Cal.4th at p. 1063; *People v. Beeson* (2002) 99 Cal.App.4th 1393, 1398-1399; § 2972, subds. (c), (e).)

---

[3]  Section 2972, subdivision (a) provides, "(a) The court shall conduct a hearing on the petition under Section 2970 for continued treatment.  The court shall advise the person of his or her right to be represented by an attorney and of the right to a jury trial. The attorney for the person shall be given a copy of the petition, and any supporting documents.  The hearing shall be a civil hearing, however, in order to reduce costs the rules of criminal discovery, as well as civil discovery, shall be applicable.  [¶]  The standard of proof under this section shall be proof beyond a reasonable doubt, and if the trial is by jury, the jury shall be unanimous in its verdict.  The trial shall be by jury unless waived by both the person and the district attorney.  The trial shall commence no later than 30 calendar days prior to the time the person would otherwise have been released, unless the time is waived by the person or unless good cause is shown."

5

## VI. DISCUSSION

Defendant contends that the trial court erred in failing to give the required jury advisement. He further contends that the court erred in conducting a bench trial based on counsel's jury waiver without obtaining a personal waiver from him.

### A. Failure to Advise

Section 2972, subdivision (a) requires the court to "advise the person of his or her right . . . to a jury trial." This language imposes a mandatory duty on the court.[4] (*Tarrant Bell Property, LLC v. Superior Court* (2011) 51 Cal.4th 538, 542 [" 'shall' " typically construed as mandatory; e.g., *People v. Tindall* (2000) 24 Cal.4th 767, 772.)

It is undisputed that the court did not directly advise defendant on the record before trial. The record reveals that counsel waived defendant's presence at the arraignment on the petition. Moreover, defendant did not make his first appearance until the bench trial on October 27, 2011. Nevertheless, the court's failure to give the required advisement does not compel reversal.

Before any judgment can be reversed for error under state law, it must appear that the error complained of "has resulted in a miscarriage of justice." (Cal. Const., art. VI, § 13; *Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 801.) This means that reversal is justified "when the court, 'after an examination of the entire cause, including the evidence,' is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*People v. Watson* (1956) 46 Cal.2d 818, 836.)

It is beyond dispute that counsel was aware of defendant's right to a jury trial. Where, as here, counsel waives an MDO's presence at pretrial hearings, effectively preventing a direct judicial advisement before trial, the court may reasonably expect

---

[4] We mean "mandatory" in its obligatory, rather than directory sense as in a required action. (See *Morris v. County of Marin* (1977) 18 Cal.3d 901, 908 [discussing distinction].)

6

counsel to discuss all pertinent matters that will arise or that have arisen in pretrial hearings, including the right to a jury trial and whether to have one. Indeed, "[l]ike all lawyers, the court-appointed attorney is obligated to keep her client fully informed about the proceedings at hand, *to advise the client of his rights*, and to vigorously advocate on his behalf. [Citations.] The attorney must also refrain from any act or representation that misleads the court. (Bus. & Prof.Code, § 6068, subd. (d); Rules Prof. Conduct, rule 5–200(B).)" (*In re Conservatorship of Person of John L.* (2010) 48 Cal.4th 131, 151-152, italics added.) Moreover, absent a showing to the contrary, "[a] reviewing court will indulge in a presumption that counsel's performance fell within the wide range of professional competence and that counsel's actions and inactions can be explained as a matter of sound trial strategy." (*People v. Carter* (2003) 30 Cal.4th 1166, 1211; *Conservatorship of Ivey* (1986) 186 Cal.App.3d 1559, 1566; e.g., *Conservatorship of Mary K.* (1991) 234 Cal.App.3d 265, 272 [where no evidence to the contrary, court may presume counsel discussed jury waiver with client before waiving on client's behalf].)

Under the circumstances, and in the absence of evidence to the contrary, we may presume that counsel discussed the jury issue with defendant.

Moreover, on appeal, the appellant bears the burden to affirmatively establish error and then demonstrate that it resulted in a miscarriage of justice that requires reversal. (*Cucinella v. Weston Biscuit Co.* (1954) 42 Cal.2d 71, 82; *Freeman v. Sullivant* (2011) 192 Cal.App.4th 523, 528; *Paterno v. State of California* (1999) 74 Cal.App.4th 68, 105-106; *Thompson v. Thames* (1997) 57 Cal.App.4th 1296, 1308; see 9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 355, p. 409 [presumption of correctness; "error must be affirmatively shown"].)

Here, the record does not suggest that defendant was unaware that counsel intended to waive a jury and had done so or that counsel acted without defendant's knowledge or consent or that defendant wanted a jury trial and objected (or would have

7

objected) to counsel's waiver. Any such inferences would be pure speculation on our part.[5]

Last, we note that a single opinion by a psychiatric expert that the defendant is currently dangerous due to a mental disorder can constitute substantial evidence to support the extension of a commitment. (*People v. Zapisek* (2007) 147 Cal.App.4th 1151*,* 1165; *People v. Bowers* (2006) 145 Cal.App.4th 870, 879.)

The expert testimony constitutes strong evidence to support the court's order extending defendant's commitment. Both Dr. Sachdev and Dr. Kepner agreed that defendant was prone to suspiciousness and paranoia, and these were symptoms of his schizophrenia that he manifested during his commitment offense. Both agreed that defendant was not sufficiently aware of and able to recognize these symptoms, and he needed to improve his ability to do so and incorporate that awareness and capacity into his relapse prevention plan. Finally, both doctors opined that defendant posed a risk of danger to others until he did so. Defense counsel cross-examined both doctors concerning the basis for their opinion but presented no evidence or testimony that contradicted or undermined their analyses and conclusions.

Under the circumstances, we do not find it reasonably probable that defendant would have obtained a more favorable result had the court ordered his presence before trial to expressly advise him about the right to a jury trial. (*People v. Watson, supra,* 46 Cal.2d at p. 836; cf. *People v. McClellan* (1993) 6 Cal.4th 367, 377, 378 [failure to advise about sex registration requirement harmless].)

---

[5] If, in fact, defendant was unaware of his right to a jury trial and would have opposed or did oppose counsel's waiver, but the evidence to establish these facts lay outside the record on appeal, defendant had the alternative a remedy of habeas corpus to challenge his commitment on the ground of ineffective assistance of counsel. (See *People v. Gray* (2005) 37 Cal.4th 168, 211 [claims grounded in facts outside the record can be raised by habeas petition]; *In re Bower* (1985) 38 Cal.3d 865, 872.)

## B. Personal Waiver

Defendant asserts that a person facing an involuntary MDO commitment has a right to participate in the decision of whether to have a jury trial. Accordingly, he claims that the Act requires a jury trial unless the court obtains the MDO's personal waiver.

Recently, in *People v. Blackburn* (2013) 215 Cal.App.4th 809 (*Blackburn*), we addressed the issues raised by defendant's claim. There, the defendant claimed that the Act required a personal waiver, and the Attorney General countered that counsel has exclusive control over whether to have a jury trial. We rejected both positions.

Concerning a personal waiver requirement, we noted that the claim previously had been rejected in *People v. Otis* (1999) 70 Cal.App.4th 1174 (*Otis*) and *People v. Montoya* (2001) 86 Cal.App.4th 825, 829 (*Montoya*).[6] Both courts noted that the statutory language did not expressly require a personal waiver; nor did it clearly preclude a waiver by counsel. The courts also declined to infer such a requirement because some MDOs may not be sufficiently competent to determine whether a bench or jury trial is in his or her best interests. Under those circumstances, the MDO must act through counsel, and counsel must have authority to act, even over the objection of such an MDO. (*Otis*, *supra*, 70 Cal.App.4th at pp. 1176-1177; *Montoya*, *supra*, 86 Cal.App.4th at pp. 830-831; cf. *People v. Powell* (2004) 114 Cal.App.4th 1153, 1157-1159 (*Powell*) [relying on *Otis* to reject a claim that similar language in section 1026.5 required personal jury waiver].)

In *Blackburn*, we agreed with *Otis* and *Montoya*. (*Blackburn, supra*, 215 Cal.App.4th at p. 820.) In addition, we opined that interpreting the statutory language to require a personal waiver resulted in consequences that were illogical and anomalous. (*Ibid.*) We noted that for a variety of reasons, MDOs often do not appear in court until

---

[6] *Otis* dealt with section 2966, subdivision (b) and *Montoya*, as here, dealt with section 2972, subdivision (a), but both sections require the court to advise the MDO of the right to a jury trial and conduct a jury trial "unless waived by the person and the district attorney."

the day of trial.  We considered it was illogical to prohibit counsel from waiving the statutory right to a jury trial at the MDO's direction or with the MDO's express consent and instead require the court to order the MDO's presence at some pretrial hearing just to secure a personal waiver because counsel can waive a client's more fundamental constitutional right to a jury trial in civil actions.  (*Ibid*.; see (Cal. Const., art. I, § 16 [right to jury trial]; Code of Civ. Proc, § 631 [prescribing types of waiver]; *Zurich General Acc. & Liability Ins. Co. v. Kinsler* (1938) 12 Cal.2d 98, 105 (*Zurich*) [waiver by party or counsel], overruled on other grounds in *Fracasse v. Brent* (1972) 6 Cal.3d 784, 792; *Cadle Co. v. World Wide Hospitality Furniture, Inc.* (2006) 144 Cal.App.4th 504, 510; *Conservatorship of Maldonado* (1985) 173 Cal.App.3d 144, 148; see Code Civ. Proc., § 283, subd. (1) [counsel has authority to bind client in any of the steps of an action].)

We further observed that some MDOs may be so delusional or otherwise affected by their mental disorders that they lack the capacity to know what is in their own best interests and make a rational decision.  Under such circumstances, an MDO may not be able to knowingly and intelligently waive the right to a jury trial.  We opined that "[i]f an MDO is incompetent, and in a particular case counsel believes that a jury waiver is in the MDO's best interests, requiring that MDO's personal waiver would undermine counsel's ability to protect the MDO's interests and mechanically require the court to conduct a jury trial or give the incompetent defendant veto power over counsel's informed determination." (*Blackburn, supra*, 215Cal.App.4th at p. 820.)

In short, we found that preventing counsel from waiving a jury at the MDO's direction or with the MDO's consent and preventing counsel from doing so on behalf of an incompetent MDO are anomalous consequences that would flow from interpreting the waiver provision literally and restrictively to require a personal waiver.  (*Blackburn,*

*supra*, 215 Cal.App.4th at p. 820.)  For that reason, we considered it unreasonable to infer such a restrictive and exclusive legislative intent from the statutory language.  (*Ibid*.)

After finding no personal waiver requirement, we rejected the Attorney General's claim that the Act gave counsel exclusive control.  Our discussion is relevant to defendant's claim here that a defendant has the right to participate in deciding whether to have a jury trial.  We noted that the Act did not expressly confer exclusive control.  Moreover, we pointed out that when read together, the requirements that the court advise the MDO of the right to a jury and conduct jury trial unless waived by "the person" not only imply that MDOs can comprehend the advisement but also contemplate that an MDO can decide whether to waive a jury trial.  (*Blackburn, supra*, 215 Cal.App.4th at p. 821.)  Indeed, we opined that interpreting the Act to give counsel exclusive control would defeat the purpose of the required jury advisement and render that provision meaningless surplusage.  (*Id*. at p. 822.)

We acknowledged that in *People v. Masterson* (1994) 8 Cal.4th 965, 974 (*Masterson*), the Supreme Court concluded that in collateral proceedings to determine the competency of a criminal defendant to stand trial, counsel has exclusive control over the whether to request a jury and may decline to do so over the defendant's objection.  (*Id*. at pp. 971, 973; see § 1368.)  We noted that the court's conclusion rested on the specific nature of a competency proceeding, where the defendant necessarily plays a lesser role.  The court's conclusion also reflected the view that when a defendant's competency is formally questioned, the defendant is assumed to be unable to act in his or her own best interests and must therefore act through counsel.  (*Blackburn, supra*, 215Cal.App.4th at p. 824.)

We observed that more recently in *People v. Barrett* (2012) 54 Cal.4th 1081 (*Barrett*), the court similarly recognized counsel exclusive authority in proceedings under Welfare and Institutions Code § 6500 to commit developmentally or intellectually

11

disabled persons who pose a danger to others. (*Barrett, supra,* 54 Cal. 4th at pp. 1104-1105.) There too counsel's exclusive authority derived from the nature of the proceedings and the mental state of the person. The *Barrett* court explained that the statute applies to persons who have significant cognitive and intellectual deficits that never recede and affect the ability to make basic decisions about the conduct of the proceedings. In other words, it may be assumed that they are unable to act in their own best interests and must act through counsel. (*Id.* at pp. 1103-1104.)

As we explained in *Blackburn*, *Masterson* and *Barrett* establish that in certain types of commitment proceedings, the defendant's alleged mental state—e.g., incompetency and developmental or intellectual disability—rendered the defendant unable to make reasoned decisions concerning whether to have a jury trial. In other words, in those proceedings, it is reasonable to categorically assume that the defendants lack the capacity to make a rational choice. For that reason, they must act through counsel, and counsel has exclusive control over the jury issue. (*Blackburn, supra*, 214 Cal.App.4th at pp. 826-827.)

Turning to the MDO context, we found it unreasonable to similarly assume that *all* MDOs lack the capacity to make a rational decision about whether to have a jury trial. (*Blackburn, supra*, 215 Cal.App.4th at p. 827.) In this regard, we relied on *Barrett.* Concerning the capacity to function in a competent manner and, more specifically, comprehend and control the jury decision, the court carefully distinguished persons who have developmental and intellectual disabilities from persons who suffer from a mental disorder, disease, or defect. The *Barrett* court concluded that unlike the former, many mentally ill persons retain the capacity to function in a competent manner, and therefore, their illness does not necessarily imply incompetence or a reduced ability to understand and make decisions about the conduct of the proceedings against them, such as comprehending an advisement and controlling the decision to request or waive a jury

12

trial. (*Barrett, supra*, 54 Cal.4th at pp. 1108-1109; *Blackburn, supra*, 215 Cal.App.4th at pp. 827-828.)

We further noted that although the courts in *Otis* and *Montoya* had upheld waivers by counsel—and in *Otis,* did so over the defendant's objection—both cases were consistent with—indeed they mirrored—the *Masterson-Barrett* rationale for recognizing counsel's exclusive control over the jury issue.[7]

In *Otis*, counsel waived a jury trial. The defendant objected and requested a jury trial, but at the time, he was delusional and said he was being sexually assaulted by invisible police. The trial court denied the request. On appeal the court upheld counsel's waiver. (*Otis*, *supra*, 70 Cal.App.4th at pp. 1175-1176.) In upholding counsel's waiver, the court explained that "[s]ection 2966 concerns persons who have been found by the Board of Prison Terms to be mentally disordered. The Legislature must have contemplated that many persons, *such as Otis*, might not be sufficiently competent to determine their own best interests. There is no reason to believe the Legislature intended to leave the decision on whether trial should be before the court or a jury in the hands of *such a person*." (*Otis, supra*, 70 Cal.App.4th at p. 1176, italics added.)

In *Montoya, supra,* 86 Cal.App.4th 825, counsel waived a jury. Although the defendant did not object, he claimed on appeal that his personal waiver was required. (*Id.* at pp. 828-829.) In concluding otherwise, the court opined that the Legislature could not have intended to require a personal waiver and thereby deny counsel the authority to act on behalf of an incompetent MDO. (*Id.* at pp. 830-831.) In this regard, the court noted that the defendant's mind was not functioning normally, and he had repeatedly and recently demonstrated poor judgment and aberrant behavior. Given the record, the court

---

[7] *Otis* dealt with section 2966, subdivision (b) and *Montoya*, as here, dealt with section 2972, subdivision (a), but both sections require the court to advise the MDO of the right to a jury trial and conduct a jury trial "unless waived by the person and the district attorney."

found "no reason to believe that defendant was capable of making a reasoned decision about the relative benefits of a civil jury trial compared to a civil bench trial." (*Montoya, supra*, 86 Cal.App.4th at p. 831, fn. omitted.)

In *Blackburn*, we understood *Otis* and *Montoya* in light of the specific facts and issues in those cases. (*Blackburn, supra*, 215 Cal.App.4th at p. 829; see *Ginns v. Savage* (1964) 61 Cal.2d 520, 524, fn. 2 ["[l]anguage used in any opinion is of course to be understood in the light of the facts and the issue then before the court"].) Given the similar mental state of the defendants in both cases, we read them "for the proposition that when an MDO appears to be incapable of determining whether a bench or jury trial is in his or her best interests, the MDO must act through counsel, and counsel has exclusive authority to decide even over the MDO's objection." (*Blackburn, supra*, 215 Cal.App.4th at p. 829.) Conversely, "[n]either case . . . should be read more broadly to hold that counsel controls the jury issue regardless of whether the MDO is competent to understand the advisement and make a reasoned decision. This is especially so because neither case addressed the purpose and function of the mandatory jury advisement." (*Id.* at pp. 329-330.)

In sum, we concluded in *Blackburn* that the Act did not require an MDO's personal waiver or give counsel exclusive control over the jury decision. Rather, we held that counsel may waive a jury at the MDO's direction or with the MDO's consent; and when there is cause to doubt the MDO's competence to determine whether a bench or jury trial is in his or her best interests, counsel can make the decision even over the MDO's objection. (*Blackburn, supra*, 215 Cal.App.4th at p. 329.)

Given *Blackburn*, we agree with defendant that ordinarily, a person facing an MDO commitment may participate in choosing between a bench and jury trial. At this point, however, the issue before us is whether the court committed reversible error. Given our analysis, it is clear that the court did not err in failing to obtain an express,

14

personal waiver from defendant himself. However, the propriety of the bench trial turns on the validity of counsel's waiver, which, in turn, hinges on whether the defendant knew he had the right to a jury trial and directed or knowingly consented to counsel's waiver.

On the record before us, defendant cannot satisfy his burden to establish that counsel's waiver was invalid or that the court erred in accepting it.

As noted, we may presume that counsel discussed the jury issue with defendant, it is mere speculation to find that defendant was unaware that counsel intended to waive a jury and had done so or that counsel acted without defendant's knowledge or consent or that defendant wanted a jury trial and objected (or would have objected) to counsel's waiver.

Moreover, even if defendant could show that counsel acted without his knowledge and consent or over his objection, he could not establish prejudice. In this regard, it is settled that the erroneous denial of a statutory right to a jury trial is subject to harmless-error review under the *Watson* test which asks whether it is reasonably probable the result would have been more favorable had there been a jury trial. (*People v. Epps* (2001) 25 Cal.4th 19, 29.)

Our *Watson* analysis concerning the court's failure to advise applies with equal force to the alleged erroneous denial of a jury trial. Given the testimony of Dr. Sachdev and Dr. Kepner, we do not consider it reasonably probable that a jury would have returned a verdict more favorable than the court's verdict. (*People v. Watson, supra,* 46 Cal.2d at p. 836; e.g., *People v. Cosgrove* (2002) 100 Cal.App.4th 1266, 1276 [denial of statutory right to MDO trial harmless].)

### D. Constitutional Claims

Defendant contends that in conducting a bench trial, the court denied him his constitutional right to a jury trial under the state and federal due process and equal protection clauses.

15

## 1. Due Process

Defendant theorizes that if the Act did not provide the right to a jury trial, he would still have the right under the state and federal constitutional guarantees of due process. He argues that the court's procedure in this case violated this constitutional right. However, since there is a statutory right, defendant's due process claim is based upon an assumption which is contrary to the state of existing law. We will not decide theoretical constitutional questions which are based upon faulty premises. (*People v. Moore* (2011) 51 Cal.4th 1104, 1123 [rejecting equal protection argument based on faulty premise]; *People v. Low* (2010) 49 Cal.4th 372, 393, fn. 11 [due process claim challenging state's actions rejected where argument based upon faulty premise that defendant committed no unlawful act]; *Berardi v. Superior Court* (2008) 160 Cal.App.4th 210, 228 [court will not decide "hypothetical or other questions of constitutional law unnecessary to our disposition of the case"].)

Moreover, we note that in *Montoya,* 86 Cal.App.4th 825, the court rejected the MDO's claim that the federal due process clause guaranteed an MDO the right to a jury trial. " 'Where . . . a State has provided for the *imposition of criminal punishment* in the discretion of the trial jury, it is not correct to say that the defendant's interest in the exercise of that discretion is merely a matter of state procedural law. The defendant in such a case has a substantial and legitimate expectation that he will be deprived of his liberty only to the extent determined by the jury in the exercise of its statutory discretion, [citation], and that liberty interest is one that the Fourteenth Amendment preserves against arbitrary deprivation by the State.' [Citation.] A jury sitting in a civil hearing pursuant to sections 2970 and 2972 does not impose criminal punishment and has no power to determine the extent to which the defendant will be deprived of his liberty. Defendant's jury trial interest thus is, in this case, 'merely a matter of state procedural law' and does not implicate the Fourteenth Amendment. [Citation]." (*Id*. at pp. 831-832,

16

quoting *Hicks v. Oklahoma* (1980) 447 U.S. 343, 346 (*Hicks*); cf. *Powell, supra*, 114 Cal.App.4th at p. 1159 [rejecting NGI's claim that denial of jury trial violated constitutional right to due process].)

Defendant cites *In re Gary W.* (1971) 5 Cal.3d 297, *People v. Feagley* (1975) 14 Cal.3d 338, *People v. Thomas* (1977) 19 Cal.3d 630, and *In re Hop* (1981) 29 Cal.3d 82 for the proposition that due process guarantees the right to a jury trial in commitment cases.

In these cases, the court found that persons facing involuntary commitment under statutory schemes that did *not* provide for a jury trial were similarly situated to persons facing commitment under schemes that provided a jury trial upon request. Thus, under the equal protection clause, the former group is entitled to request a jury trial unless there is a valid justification for not allowing them to do so. And if there is no such valid justification, the unequal treatment is arbitrary and violates due process. However, none of these cases separately analyzed whether, apart from arbitrarily treating similarly situated persons differently, the due process clause independently guarantees persons subject to civil commitment the right to a jury trial. Accordingly, we find defendant's reliance on them to be misplaced.

Moreover, while the arbitrary denial of a statutory right may violate the constitutional guarantee of due process, the record here does not establish that the court's failure to advise defendant and failure to conduct a jury trial were arbitrary. Counsel waived defendant's presence at every hearing before trial, and counsel also waived a jury trial. Again, we do not presume error, and, as noted, because defendant has not shown that counsel's waiver was unauthorized or otherwise invalid, he can no more show a constitutional violation than he could show a statutory violation. Accordingly, we reject defendant's due process claim.

17

## B.  Equal Protection

Defendant asserts that in every scheme permitting the involuntary commitment of a person for mental health purposes, there is a right to a jury trial.  He further asserts that an MDO defendant facing an extended commitment is similarly situated to persons facing a commitment under these other schemes.  Thus, he claims that in conducting a bench trial here, the court denied him equal protection.  Defendant's claim fails because the Act provides defendant with the right to a jury trial, and counsel waived that right.  Thus, defendant fails to identify how he was treated differently from how he would have been treated under any of the other commitment schemes.

## VII.  DISPOSITION

The order extending defendant's commitment is affirmed.

_____
RUSHING, P.J.

I CONCUR:

_____
GROVER, J.

18

ELIA, J., Concurring

I respectfully concur in the judgment on the ground that no reversible error has been shown.  (Cal. Const., art. VI, § 13; *People v. Watson* (1956) 46 Cal.2d 818, 836.) We must presume for purposes of this appeal that appellant's counsel informed appellant that he was entitled to be tried by a jury and counsel waived a jury trial in accordance with appellant's informed consent (see maj. opn., *ante*, p. 2).  (See *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 [all presumptions are indulged to support a lower court judgment or order regarding matters as to which the record is silent; error must be affirmatively shown]; see also *Conservatorship of John L.* (2010) 48 Cal.4th 131, 148 ["When a statutory right in a civil commitment scheme is at issue, the proposed conservatee may waive the right through counsel if no statutory prohibition exists. [Citations.]"], 151-152 [attorney is obligated to keep client fully informed of proceedings, to advise client of his rights, and to refrain from any act or representation that misleads the court].)

Even assuming arguendo that appellant had a constitutional right to a jury trial as a matter of due process, the same presumption regarding waiver applies on appeal.  (See *Denham v. Superior Court*, *supra*, 2 Cal.3d at p. 564; *Conservatorship of John L.*, *supra*, 48 Cal.4th at pp. 151-152.)  To the extent appellant is arguing that he had concomitant due process rights, under either the United States or California Constitution, to a judicial advisement of his right to a jury trial and to personally waive a jury on the record, his arguments are unpersuasive since he was represented by counsel who presumably advised and consulted with him and there is no constitutional provision explicitly requiring an express, personal waiver of a jury in noncriminal proceedings.  (See Cal. Const., art. I, § 16; cf. Code Civ. Proc., § 631; *People v. Bradford* (1997) 14 Cal.4th 1005, 1052-1053 [in criminal prosecution, no express, personal waiver from a defendant

is required for waiver of constitutional right to testify; a trial judge may safely assume that a nontestifying defendant is abiding by his counsel's trial strategy].)

Consequently, it is unnecessary in this case to repeat the majority's conclusions in *People v. Blackburn* (2013) 215 Cal.App.4th 809 regarding the exact extent of a counsel's authority to waive a jury for trial on a petition for continued treatment (Pen. Code, §§ 2970, 2972). As the U.S. Supreme Court stated: "The duty of this court, as of every other judicial tribunal, is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." (*Mills v. Green* (1895) 159 U.S. 651, 653 [16 S.Ct. 132]; see *Eye Dog Foundation v. State Board of Guide Dogs for the Blind* (1967) 67 Cal.2d 536, 541.)

_____

ELIA, J.

2